**EAST ARAPAHOE LAND COMPANY, Plaintiff–Appellee,**

v.

**BOARD OF ASSESSMENT APPEALS OF the STATE OF COLORADO; and The Board of County Commissioners of the County of Arapahoe, State of Colorado, sitting as the Arapahoe County Board of Equalization, Defendants–Appellants.**

**No. 89CA1817.**

Colorado Court of Appeals, Div. C.

Nov. 8, 1990.

As Modified on Denial of Rehearing Jan. 31, 1991.

 

Loser, Davies, Magoon & Fitzgerald, P.C., Ronald S. Loser, Diane B. Davies, Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for defendant-appellant Board of Assessment Appeals of the State of Colo.

Peter Lawrence Vana III, Co. Atty., Richard F. Mutzebaugh, Spec. Asst. Co. Atty., Littleton, for plaintiffs-appellants The Board of County Com'rs of the County of Arapahoe and Arapahoe County Bd. of Equalization.

Opinion by Judge RULAND.

The sole issue in this appeal is the correct interpretation and application of Colo. Sess.Laws 1988, ch. 268, § 39–1–103(14) at 1281, governing valuation of vacant, non-agricultural land for purposes of general property taxation. Defendants, The Board of Assessment Appeals and the Board of County Commissioners, appeal from a judgment of the district court determining that the county assessor's office misapplied the statute in its valuation of land owned by plaintiff, East Arapahoe Land Company. We affirm.

East Arapahoe owns four lots totalling 34.7 acres in a platted subdivision. The property is zoned "mixed use, planned unit development."

East Arapahoe projects use of the property for commercial development. While three water and sewer taps have been purchased for the property, no buildings or fixtures have been constructed. Under current county regulations, the property would require further subdividing and platting before commercial lots could be developed and sold.

The assessor's office valued the property based upon the use of comparable vacant land sales. East Arapahoe challenged the valuation asserting that the assessor had not complied with the statute. The Board of County Commissioners and the Board of Assessment Appeals agreed with the assessor.

Section 39–1–103(14) was added to the statutes governing valuation of real property in 1988 based upon the General Assembly's finding that wide disparity existed in the treatment of vacant land among the various counties. Colo.Sess.Laws 1988, ch. 268, § 39–1–103(14)(a) at 1281.

As pertinent here, that statute provided:

"(b) The assessing officers shall give appropriate consideration to the cost approach, market approach, and income approach to appraisal as required by the provisions of section 3 of article X of the state constitution in determining the actual value of vacant land. When using the market approach to appraisal in determining the actual value of vacant land, assessing officers *shall* take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the cost of development, any amenities, any site improvements, access, and use. When using anticipated market absorption rates, the assessing officers shall use appropriate discount factors in determining the present worth of vacant land until at least eighty percent or more of the lots within an approved plat have been sold and shall include all vacant land in the approved plat. The use of present worth shall reflect the anticipated market absorption rate for the lots within such plat, but such time period shall not generally exceed ten years."

"(c)(I) For purposes of this subsection (14), 'vacant land' means any *lot, parcel, site, or tract of land* upon which no buildings, structures, or fixtures are located. 'Vacant land' may include land with site improvements. 'Vacant land' may include land with improvements that may be part of a *development tract or subdivision* when using present worth discounting in the market approach to appraisal. 'Vacant land' does not include agricultural land, producing oil and gas properties, severed mineral interests, and all mines, whether producing or nonproducing."

"(II) For purposes of this subsection (14), 'site improvements' means streets with curbs and gutters, culverts and other sewage and drainage facilities, and utility easements and hookups for individual lots or parcels." (emphasis supplied)

Based upon its interpretation of regulations adopted by the Property Tax Administrator in applying the market approach, the assessor's office used only comparable sales of vacant land to determine the valuation of East Arapahoe's land. The anticipated market absorption rate was considered but not used because the land had not yet been subdivided into lots in compliance with current county regulations.

Defendants contend that the district court erred in interpreting the statute to require use of the anticipated market absorption rate in determining actual value. Defendants read the statute to require use of this valuation method only if the property has been subdivided in compliance with current county regulations. They also argue that the Property Tax Administrator's regulations must be given deference in this interpretation. Otherwise, they contend, the assessor must speculate on how the property ultimately will be subdivided which, in turn, will lead to disparate valuations among similar properties. We find no merit in these contentions.

In reviewing the statute, we are required to use the common and accepted meaning of the words used. *Montrose v. Niles*, 124 Colo. 535, 238 P.2d 875 (1951). And, if the language of the statute is plain and permits only one construction, we must apply the statute as written unless an absurd result is reached. *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973). Furthermore, unless an absurd result would follow from the unambiguous language, it establishes the intent of the General Assembly, and that intent must be followed notwithstanding any contrary interpretation by the administrative agency responsible for applying the statute. *See Colorado Division of Employment & Training v. Parkview Episcopal Hospital*, 725 P.2d 787 (Colo.1986).

Here, as quoted above, "vacant land" is expressly defined by the pertinent statute as "any *lot, parcel,* site, or *tract* of land ..." (emphasis added) The term "lot" has a common and accepted meaning which designates an area of land as part of a subdivision. *See* Bureau of Land Management, *Manual of Surveying Instructions* § 3–81 (1973).

The terms "parcel" and "tract" have been used by the General Assembly to designate both subdivided and unsubdivided areas. *See* § 24–32–703(7), C.R.S. (1988 Repl. Vol. 10A); § 30–28–301(1), C.R.S. (1990 Cum.Supp.). However, when those terms have been used in a statute to designate an area of land as part of a subdividison, or to define a subdivision, a specific reference to "subdivision" has been included. *See* § 38–51–100.3(8), C.R.S. (1982 Repl. Vol. 16A); § 30–28–133.1, C.R.S. (1986 Repl. Vol. 12A); § 24–68–102(4), C.R.S. (1988 Repl. Vol. 10B). The same is true with reference to the property tax provisions as well. *See* § 39–5–103, C.R.S. (1982 Repl. Vol. 16B).

▪ Here, there is no reference to a "subdivision" in the statutory definition of "vacant land." Although, the definition of "vacant land" is broad enough to include "any lot, parcel, site or tract" in a platted subdivision, that definition does not express or imply an intent by the General Assembly to exclude areas that are not within a platted subdivision.

Hence, we conclude that § 39–1–103(14)(b) requires the assessor's office to consider the anticipated market absorption rate as part of the market approach in determining the actual value of East Arapahoe's land. This requirement must be met, notwithstanding the fact that the land is not subdivided in compliance with currently applicable subdivision regulations.

Contrary to defendants' contention, the other references to subdivisions in § 39–1–103(14) do not modify the express definition of vacant land contained in § 39–1–103(14)(c)(I). Instead, these provisions establish that if a parcel has been subdivided in compliance with current regulations, consideration of the absorption rate may be discontinued when 80% or more of the lots have been sold.

Also contrary to defendants' contention, if, as here, the assessor determines to apply the market approach for establishing actual value of vacant land, the statute does not permit the assessor to "consider" the absorption rate and then disregard its use. Unlike § 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.) which was construed by this court in *Montrose Properties, Ltd. v. Board of Assessment Appeals,* 738 P.2d 396 (Colo.App.1987), § 39–1–103(14) does not vest the assessor with discretion to select a valuation process which is deemed "applicable." *See Board of Assessment Appeals v. Sonnenberg,* 797 P.2d 27 (Colo. 1990). Had the General Assembly intended to grant the assessor this authority, § 39–1–103(14) would have been adopted in a format similar to § 39–1–103(5)(a).

▪ Finally, a determination by the assessor as to the ultimate lot size for a tract of vacant land is not a matter of pure speculation. Substantial guidance is necessarily available from the county regulations which pertain to the zoning resolution governing this property. In addition, a determination of adaptability or availability of land for a particular use has not historically been considered beyond the expertise of the assessor's office. *See Denver v. Lewin,* 106 Colo. 331, 105 P.2d 854 (1940). Rather, a taxing body's decision relative to classification of land must be upheld if the classification is reasonable. *See Valley Housing & Development Corp. v. Ridges Metropolitan District,* 753 P.2d 801 (Colo. App.1988).

The judgment is affirmed.

HUME and ROTHENBERG, JJ., concur.