**EL PASO COUNTY BOARD OF EQUALIZATION; The Board of Assessment Appeals of the State of Colorado; and Ramon L. LeDuke and Susan Broyles Layton, each as Members of the Board of Assessment Appeals of the State of Colorado, Petitioners,**

v.

**James CRADDOCK and American Capital Fidelity Corporation, a California Corporation, as successor in interest to James Craddock, Respondents.**

No. 92SC6.

Supreme Court of Colorado, En Banc.

April 12, 1993.

Rehearing Denied May 10, 1993.

---

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., Thomas D. Fears, Asst. Atty. Gen., General Legal Services Section, Denver, for petitioners.

James E. Heiser, Denver, for respondents.

Justice MULLARKEY delivered the Opinion of the Court.

The El Paso County Board of Equalization (the Board), the Board of Assessment Appeals, and Ramon L. LeDuke and Susan Broyles Layton (referred to collectively as the BAA) sought review of an unpublished decision of the court of appeals, *Craddock v. El Paso Board of Equalization*, No. 90CA1771 (Nov. 7, 1991), in which the court of appeals, construing sections 39–1–103(14)(b) and (c)(I), 16B C.R.S. (1982 and 1992 Supp.), held that the BAA must apply the anticipated market absorption rate to the appraised value of the respondents' property. Because we conclude that the court of appeals has misconstrued the applicable statute, we reverse the judgment of the court of appeals with directions to remand the case to the BAA to reinstate its valuation of the property.

I.

Respondents James Craddock and American Capital Fidelity Corporation (Craddock) own approximately 276 acres of unplatted vacant land, divided into seven tracts. The property is located in an industrial area of El Paso County between Powers Boulevard and the municipal airport, extending both north and south of Fountain Boulevard. After considering the three approaches to appraisal, the cost approach, the income approach, and the market approach, the El Paso County Assessor (the assessor) valued the property using the market approach, with a valuation of $12,256,494 as of June 30, 1988. Craddock appealed the valuation to the Board which denied the protest. Craddock subsequently appealed to the BAA. In support of the appeal, Craddock introduced an appraisal based on fourteen comparable land sales. Craddock's appraisal valued the property at a market value of $10,540,000, and after applying the market absorption rate, derived a final discounted value of $6,140,000 for Craddock's property.

The BAA found Craddock's comparable sales to be "far superior" to those presented by the assessor. However, the BAA concluded that the subject tracts were not eligible for a market absorption discount.

Accordingly, the BAA ordered the Board to reduce the assessed value to $10,540,000.

Craddock appealed the BAA's decision to the court of appeals. The court of appeals, relying on that court's decision in *East Arapahoe Land Co. v. Board of Assessment Appeals*, 805 P.2d 1170 (Colo.App. 1990), held that the BAA was in error in its apparent reasoning that the market absorption rate cannot be used in valuing unplatted vacant land. Reversing the BAA's decision, the court of appeals held that the assessor was required to apply the market absorption rate in valuing vacant, unplatted land.

We granted certiorari on the following issue: Whether section 39-1-103(14)(b), 16B C.R.S. (1992 Supp.) mandates the application of the anticipated market absorption rate to all vacant land, even if it is unplatted and unsubdivided? Because we conclude that the court of appeals, both in this case and in *East Arapahoe*, has misconstrued this statute and has improperly substituted its judgment for that of the assessor and the BAA regarding the technical process of valuing real property, we reverse the judgment of the court of appeals in this case, overrule *East Arapahoe*, and remand this case with directions.

## II.

### A.

An assessor has a duty to determine the actual value of all real and personal property for property tax purposes. § 39-1-103(5)(a), 16B C.R.S. (1992 Supp.). The methods which the assessor may use in determining actual value are prescribed by statute. § 39-1-101, 16B C.R.S. (1982 & 1992 Supp.). There are three statutorily mandated approaches to valuation of property: the cost approach, the market approach, and the income approach. § 39-1-103(5)(a). When valuing vacant land, an assessor is to also take into account several additional factors, including the "anticipated market absorption rate." § 39-1-103(14)(b) and (c)(I).[1] To guide the state's assessors in valuing property, the Property Tax Administrator has a statutory duty to prepare and publish manuals, appraisal procedures, and instructions concerning method of appraising and valuing property, based upon the three statutorily mandated approaches to appraisal. § 39-2-109(e), 16B C.R.S. (1992 Supp.). In fulfillment of this duty, the Division of Property Taxation has published the *Assessors Reference Library*, Volume Three of which concerns land valuation.

When construing a statute, courts afford deference to the interpretation given the statute by the officer or agency charged with its administration. *Howard Elec. and Mechanical Inc. v. Department of Revenue*, 771 P.2d 475, 478-79 (Colo. 1989). Courts, of course, must interpret the law and are not bound by an agency

---

1. The applicable version of sections 39-1-103(14)(b) and (c)(I), 16B C.R.S. (1988 Supp.) provide:

(b) The assessing officers shall give appropriate consideration to the cost approach, market approach, and income approach to appraisal as required by the provisions of section 3 of article X of the state constitution in determining the actual value of vacant land. When using the market approach to appraisal in determining the actual value of vacant land, assessing officers shall take into account, *but need not limit their consideration* to, the following factors: The anticipated market absorption rate, the size and location of such land, the cost of development, any amenities, any site improvements, access, and use. When using anticipated market absorption rates, the assessing officer shall use appropriate discount factors in determining the present worth of vacant land until at least eighty percent or more of the lots within an approved plat have been sold and shall include all vacant land in the approved plat. The use of present worth shall reflect the anticipated market absorption rate for the lots within such plat, but such time period shall not generally exceed ten years.

(c)(I) For purposes of this subsection (14), "vacant land" means any lot, parcel, site, or tract of land upon which no buildings, structures, or fixtures are located. "Vacant land" may include land with site improvements. "Vacant land" may include land with improvements that may be part of a development tract or subdivision when using present worth discounting in the market approach to appraisal. "Vacant land" does not include agricultural land, producing oil and gas properties, severed mineral interests, and all mines, whether producing or nonproducing.

decision that misapplies or misconstrues the law. *Id.* An administrative agency's construction should be given appropriate deference, but is not binding on the court. *Id.* Administrative interpretations are most useful to the court when the subject involved calls for the exercise of technical expertise which the agency possesses and when the statutory language is susceptible to more than one reasonable interpretation. These factors lend great weight to the Property Tax Administrator's interpretation of the statutory provision now before us and entitle that interpretation to deference. We find the Property Tax Administrator's interpretation to be persuasive in deciding this case.

The Property Tax Administrator has listed five criteria for determining the applicability of present worth discounting. 3 *Assessors Reference Library* at 1.44. These criteria are:

1. Applied to vacant land (land without a structure) only. An exception is when the assessor has classified a minor structure on vacant land.
2. A defined sales or marketing area can be established.
3. Less than 80% of the lots, tracts, or parcels within the marketing area have been sold.
4. More than one lot, tract, or parcel in the marketing area.
5. The absorption period for the marketing area is calculated to be more than one year.

*Id.* The Administrator has stated that there is no requirement either that the tracts, lots, sites, or parcels of vacant land be in a legal subdivision, or that discounting applies only to residential land. *Id.*

### B.

The "anticipated market absorption rate,"[2] in this context, is a method which adjusts the value of property to account for the developer's cost of development and placing site improvements. Its purpose is to assist a developer by relieving some of the burden of carrying the up-front costs expended in preparing the property for development and retail sale. The anticipated market absorption rate recognizes the time value of a developer's investment by treating the value of individual subdivision lots like payments. in an anticipated future annuity stream. In other words, instead of valuing a multiple-lot subdivision development as the sum of the values of the individual lots, the anticipated market absorption rate discounts the value of the development to the amount that a purchaser of the development would be willing to pay for the entire development on the assessment date. The value derived is the present value of the future income stream represented by the anticipated future sales of the individual lots. This adjustment of value is important because, in valuing property, the sum of the parts can be, and often is, greater than the whole. "The market value of a large parcel does not necessarily equal the sum of the market value of the parts into which that parcel may be divided or subdivided because smaller parcels may be more readily marketable." *Ward v. Department of Revenue*, 293 Or. 506, 650 P.2d 923, 925 (1982). Offsetting the ready marketability of smaller parcels of property is the fact that, despite the "ready market," selling a large number of lots takes time.

The Property Tax Administrator has set out a four-step process for assessors to use in applying the anticipated market absorption rate. 3 *Assessors Reference Library* at 7.34–7.42. First, the assessor must determine a "marketing area,"[3] that is, a

---

**2.** The anticipated market absorption rate is also known as the developer's discount or the present worth method of valuation of land.

**3.** The *Assessors Reference Library* defines "marketing area" as follows:

The environment of a group of properties used for marketing or sales of platted land by a subdivider or developer. Marketing areas may or may not be limited to platted subdivi-

sions, filings, blocks or other defined legal descriptions.

Marketing areas can be delineated by homogeneous property characteristics. Typically, marketing areas are platted sites available for purchase or development with similar physical, economic, governmental and social factors.

group of properties used for marketing or sales of platted land by a subdivider or developer, not necessarily limited to platted subdivisions, filings, blocks, or other defined legal descriptions. After a marketing area is determined, an assessor must determine an adjusted selling price for each individual lot. This is done by collecting comparable sales and adjusting them according to time, location, and condition differences between the comparable sales and the subject properties. Third, an assessor must determine the absorption period, by dividing the number of tracts remaining in the marketing area by the rate at which the tracts historically have sold.

Finally, the assessor must discount the adjusted selling price to present value. This requires an additional three steps. First, the assessor must choose an appropriate discount rate and determine the appropriate discounting factor. This discounting factor is the present value of an annuity of one dollar per period over the absorption period. The discounting factor can be derived from standard tables or by using a financial calculator. The next step is to calculate the annuity payment for each year for each lot, in order to normalize the discounting over the entire market area, and to determine the present value of that annuity. This is done by dividing the adjusted selling price of each lot by the absorption period, and then multiplying this quotient by the discounting factor. Finally, the discounted adjusted selling prices of all the tracts, lots, or parcels in the marketing area must be added together.

### C.

Craddock contends that, because the statute provides that "[w]hen using the market approach to appraisal in determining the actual value of vacant land, assessing officers *shall* take into account ... the anticipated market absorption rate, ..." (emphasis added), the assessor and the BAA are required to apply the market ab-

sorption rate method when valuing any vacant land using the market approach. The BAA responds that, considering and reading the statute as a whole, the market absorption rate cannot be applied to unplatted vacant land.

We do not agree fully with either party's argument. Craddock looks only at one sentence in the statute in isolation, and does not acknowledge that the language relied upon indicates that some discretion lies in the assessor. The BAA, on the other hand, argues that the statute, which is neither clear nor explicit on the point, must be construed to mean that the anticipated market absorption rate cannot ever be applied to unplatted vacant land.

We begin by analyzing the relevant provisions of the statute. In section 39-1-103(14)(b), the third sentence provides that, when the anticipated market absorption rate is used, at least with regard to platted land, it is to be used only until eighty percent of the lots within the plat are sold. Such explicit instructions as to the use of the anticipated market absorption rate indicates that the anticipated market absorption rate is to be used for platted land. The definition of "vacant land" in section 39-1-103(14)(c)(I), however, is expansive. When using present worth discounting in the market approach to appraising land, "vacant land" means any lot, parcel, site, or tract of land upon which no buildings, structures, or fixtures are located, including land with site improvements, and *including* land that is *part* of a development tract. Saying that vacant land "includes" a development tract indicates that vacant land other than that which is under development also qualifies for present worth discounting using the anticipated market absorption rate. This tension, however, need not be resolved in the present case.

Section 39-1-103(14)(b) provides that an assessor must take into account certain factors when using the market approach in determining the value of land, namely, the

Residential and commercial marketing areas are likely to overlap since the commercial areas serve their surrounding residential use properties. Commercial marketing areas are

likely to closely resemble designated commercial zoning areas.

3 *Assessors Reference Library* at 7.28.

anticipated market absorption rate, the size and location of the land, the cost of development, any amenities, any site improvements, access, and use. The General Assembly did not, however, direct assessors to be limited to those factors, or state that any factor or factors were to be conclusive in determining the value of land. In this respect, we are persuaded by the construction of similar language found in section 39–1–103(5).

Pursuant to section 39–1–103(5), in assessing the valuation for most commercial property, the assessor determines the "actual value" of the property by "appropriate consideration" of the three methods of real property assessment: the cost approach, the income approach, and the market approach. Furthermore, in valuing "vacant land," the assessor must "take into account, but need not limit [his or her] consideration to, [t]he anticipated market absorption rate, the size and location of such land, the cost of development, any amenities, any site improvements, access, and use."

In *Montrose Properties, Ltd. v. Board of Assessment Appeals*, 738 P.2d 396 (Colo. App.1987), the assessor only made complete and documented calculations using one approach, the cost approach method of evaluation. The assessor testified that the market approach was not used because there were no sales of like kinds of property within the county, and that the income approach was not used because there was insufficient information to calculate the proper tax assessment using that approach. The court of appeals held that "appropriate

consideration" does not require complete consideration and documentation of all three approaches. *Id.* at 397. Instead, the court of appeals stated that "the statute recognizes that some approaches may not be applicable." *Id.* We approved of this construction of the statutory language in *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27, 34–35 (Colo.1990), although each approach must be considered if there is sufficient information from the relevant market to employ that approach to valuation. *Sonnenberg*, 797 P.2d at 35.

■ Similarly, we conclude that, although the anticipated market absorption rate must be taken into account when assessing vacant land, other factors which the assessor may take into account may lead the assessor to the conclusion that the application of the absorption rate is not appropriate.[4] Such factors may include that the lots are not within a subdivision subject to an approved plat, or that the tracts are not sufficiently similar to be part of the same marketing area, or even that the lots within a subdivision subject to an approved plat are being held as open space, and not being actively marketed for development.[5] *See* 3 *Assessors Reference Library* at 1.44.

The court of appeals, in *East Arapahoe*, stated, "[A] determination by the assessor as to the ultimate lot size for a tract of vacant land is not a matter of pure speculation. Substantial guidance is necessarily available from the county regulations

---

**4.** Furthermore, even when the application of the anticipated market absorption rate is appropriate, the purpose of using the discount rate must be taken into account. The purpose of using the anticipated market absorption rate is to discount the value of a number of lots of vacant land in a development to the amount a buyer would pay for the entire vacant portion of that development, that is, the actual value of the aggregate. For this reason, the Property Tax Administrator has directed that:

> The discounted vacant land actual value must never drop below the actual value of raw, undeveloped vacant land as related to the appropriate level of value. This minimum value is the value of the original vacant land tract adjusted to the current level of value.

3 *Assessor's Reference Library* at 7.25. An application of the anticipated market absorption rate that results in an actual value less than the actual value of the raw land indicates an error in one or more of the assumptions used to calculate the discounted value. For example, the discount rate chosen or the absorption rate chosen may have been erroneous. As the Property Tax Administrator has emphasized, looking at the adjusted value of the unsubdivided vacant land tract is a reliable method of corroborating the results of the use of the market absorption rate.

**5.** The same result would be reached if the assessor determined that the applicable absorption period is less than one year, and that therefore, discounting would not be appropriate.

which pertain to the zoning resolution governing this property." *East Arapahoe*, 805 P.2d at 1173. We disagree with this statement. Zoning ordinances would give minimal guidance to an assessor in determining lot size, at best, and would give no guidance at all in the present case.

In the case of a tract of land zoned, as here, for planned zoning,[6] the zoning regulation is designed to allow a great deal of flexibility. *See, e.g.*, II Colorado Springs City Code § 14.1–3–1701, –1710 (1980) (Planned Industrial Park—PIP–1). The owner of such a tract could develop it to the extent of the zoning regulation. Furthermore, even the zoning ordinance may not give sufficient direction, because zoning regulations, for the most part, only define the upper and lower limits for development, giving the developer the discretion to determine how many lots into which to subdivide its property. In addition, zoning regulations do not give the assessor standards because the assessor's classification of land has more to do with the best and highest use of the land, and not how the present-day zoning map classifies the land.

Even though "a taxing body's decision relative to classification of land must be upheld if the classification is reasonable," *East Arapahoe*, 805 P.2d at 1173, "[a]n assessor who values a farm as though actually subdivided into the building lots of a residential development when in fact that has not yet occurred would be in error ..." *Board of Assessment Appeals v. Colorado Arlberg Club*, 762 P.2d 146, 153 (Colo.1988) (quoting *Division of Tax Appeals v. Township of Ewing*, 72 N.J.Super. 238, 178 A.2d 229, 232 (1962)). A county assessor is in the business of assessing the value of property; the assessor is neither the county planner nor a developer. Establishing a marketing area which does not already exist, rather than merely determining an already existing marketing area, is beyond

what the assessor can and should do under the statutory scheme.[7] The establishment of a marketing area, dividing a piece of property up into pieces and deciding to what use to put the pieces, are decisions that the land owner must do before an assessor can attempt to determine what the marketing area is. *See Sunbelt Serv. Corp. v. Board of Assessment Appeals*, 802 P.2d 1199 (Colo.App.1990).

### III.

The court of appeals in the present case, as well as in *East Arapahoe Land Co. v. Board of Assessment Appeals*, 805 P.2d 1170, incorrectly held that section 39–1–103(14) requires an assessor to apply the anticipated market absorption rate, even when the assessor and the Property Tax Administrator determined that such application of the absorption rate is not appropriate. Accordingly, we reverse the judgment of the court of appeals, and remand the case with directions for the court of appeals to remand the case to the Board of Assessment Appeals with directions to reinstate its previous decision. *East Arapahoe* is overruled.

---

**6.** By "planned zoning," we mean such classifications as Planned Industrial Park, as here, Planned Industrial District, Planned Unit Development, Planned Business Park or Business Center, or the like.

**7.** We note that, subsequent to the tax year in question, the General Assembly added two para-

graphs providing that subdivision owners who own vacant land are to answer questionnaires designed to elicit information to be used for determining the present worth of vacant land, including information regarding marketing areas. § 39–1–103(14)(d) and (e), 16B C.R.S. (1992 Supp.).