GOLDEN GATE DEVELOPMENT
COMPANY, Petitioner–
Appellee,

and

Board of Assessment Appeals of the
State of Colorado, Appellee,

v.

GILPIN COUNTY BOARD OF
EQUALIZATION, Respondent–
Appellant.

No. 92CA0622.

Colorado Court of Appeals,
Div. V.

June 17, 1993.

Bradley, Campbell, Carney & Madsen, P.C., Victor F. Boog, Golden, for petitioner-appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, for appellee.

Petrock & Fendel, P.C., James J. Petrock, Frederick A. Fendel, III, Denver, for respondent-appellant.

Opinion by Judge RULAND.

In this property tax case, respondent, the Gilpin County Board of Equalization, appeals from an order of the Board of Assessment Appeals (BAA) which reduced the County's valuation of property owned by petitioner, Golden Gate Development Company (taxpayer), for the 1991 property tax year. We affirm.

The subject property consists of 18 unsold lots of vacant land in a subdivision being developed by taxpayer in Gilpin County. At a *de novo* evidentiary hearing conducted before the BAA, both taxpayer and the County presented evidence in support of their respective valuations of the lots.

Since less than 80 percent of the lots had been sold as of the 1991 assessment date, both taxpayer and the County agreed that the present worth discounting procedure for valuing vacant land under the market approach was applicable pursuant to § 39–1–103(14)(b), C.R.S. (1992 Cum.Supp.). However, taxpayer and the County disagreed, both as to the appropriate valuation of the lots prior to the application of the discounting procedure, and as to the appropriate absorption or sellout period to be used in applying that procedure.

Following the hearing, the BAA ordered the valuation to be reduced to values substantially in conformity with taxpayer's evidence, ruling that taxpayer had presented sufficient probative evidence to prove that the lots were incorrectly valued for the 1991 tax year. As the basis for its ruling, the BAA first concluded that the property should be valued on an individual lot basis. The BAA further determined that the ap-propriate valuation of the individual lots was substantially in conformity with the testimony of one of taxpayer's witnesses. Finally, the BAA concluded that the appropriate absorption period to be used in applying the present worth discounting procedure here should be 20 years, as indicated by taxpayer's evidence.

## I.

■ The County first contends that the BAA erred in reducing the valuation of the individual lots prior to the application of the discounting procedure based on taxpayer's evidence. We find no merit in this contention.

Here, contrary to the County's argument, taxpayer and the BAA did not disregard the use of comparable sales of vacant land in determining the appropriate valuation of the individual lots under the market approach. Instead, taxpayer expressly relied on the same comparable sales data relied upon by the county assessor, including the sale of two lots within this subdivision. However, taxpayer asserted that various adjustments to these sales figures were necessary in valuing the individual lots to account for the differences in various physical characteristics of the lots.

Taxpayer then presented testimony by the real estate broker marketing the lots, without objection from the County, concerning his opinion of the market value of each individual lot based on these physical characteristics. The record reflects that the broker's valuations of the individual lots were not based solely on asking prices, as the County suggests. Rather, he testified as to his estimates of probable selling prices.

■ The determination of the degree of comparability of the vacant land sales data and the weight to be given to various physical characteristics of the individual lots in making adjustments to the sales data were questions of fact for the BAA to decide. *See Cherry Hills Country Club v. Board of County Commissioners*, 832 P.2d 1105 (Colo.App.1992). And, in making

these determinations, the evaluation of the credibility of the witnesses and the weight, probative value, and sufficiency of all of the evidence were matters solely within the fact finding province of the BAA, whose decisions on these issues may not be displaced on appeal. *See Board of Assessment Appeals v. Colorado Arlberg Club*, 762 P.2d 146 (Colo.1988); *Burns v. Board of Assessment Appeals*, 820 P.2d 1175 (Colo.App.1991).

Thus, we conclude that the BAA's determination of the appropriate valuation of the individual lots prior to the application of the discounting procedure was supported by competent and substantial evidence in the record as a whole, and this ruling, therefore, may not be disturbed on review. *See* §§ 24–4–106(7) & (11)(e), C.R.S. (1988 Repl.Vol. 10A); *El Paso County Board of Equalization v. Craddock*, 850 P.2d 702 (Colo.1993).

## II.

■ The County also contends that the BAA erred in ruling that a 20–year period was the appropriate absorption period to be used in applying the present worth discounting procedure here. According to the County, the BAA failed to apply the statutorily prescribed method of calculating the appropriate absorption rate required under the provisions of § 39–1–103(14)(b), and it maintains that the correct absorption rate must be based on the sales history of the lots in the subdivision from the date of its inception in 1972 to the assessment date. Since 49 lots had been sold in this 18–year period, this method of calculating the absorption rate would, the County contends, result in an absorption or sellout period of approximately 7 years.

In the alternative, the County contends that the BAA also approved an absorption period which exceeds the maximum permitted by the statute which it views as 30 years because the 18–year sales history of the lots in this subdivision must be included in this computation.

In contrast, taxpayer asserted that a more appropriate and realistic absorption rate would be one lot per year, resulting in an absorption period of 20 years necessary to sell the 20 lots that remain unsold. This rate was based on the more recent sales history of the lots in the subdivision in which taxpayer had sold only one lot in the last ten years. We perceive no error in the BAA's ruling.

Section 39–1–103(14)(b), C.R.S. (1992 Cum.Supp.) addresses the absorption rate to be used in applying the statutorily present worth discounting procedure for valuing vacant land under the market approach, as follows:

> When using the market approach to appraisal in determining the actual value of vacant land as of the assessment date, assessing officers shall take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the direct costs of development, any amenities, any site improvements, access, and use. When using anticipated market absorption rates, the assessing officers shall use appropriate discount factors in determining the present worth of vacant land until eighty percent of the lots within an approved plat have been sold and shall include all vacant land in the approved plat.... The use of *present worth* shall reflect the *anticipated market absorption rate* for the lots within such plat, *but such time period shall not generally exceed thirty years.*

(emphasis added)

■ Contrary to the County's contention, as we read the statute the General Assembly has not elected to specify by express language how the time frame for anticipated market absorption must be calculated in each case except that the period shall not "generally" exceed 30 years. Because the statute does not provide specific guidance on this issue, we turn to administrative interpretation of this provision by the property tax administrator who is charged with enforcement of the Act. *See El Paso County Board of Equalization v. Craddock, supra.*

In the most recent treatment of this issue, the property tax administrator indicates that the assessor should rely primarily on the sales history of the lots in a subdivision over a 24–month to 78–month period tied to the applicable base period in recalculating an absorption period for each tax year. 3 *Assessors Reference Library* § VII at 7.39–7.42 (as revised 1–92). In addition, the property tax administrator has consistently stated that: "When possible, local developers and real estate professionals should be consulted for their opinion of the absorption period." 3 *Assessors Reference Library* at 7.42.

Here, the absorption rate is fully supported by the testimony of taxpayer's expert, a local real estate broker. Finally, neither the property tax administrator's manual nor the plain language of the statute imposes a mandatory 30–year cap on the absorption rate from the date sales of a subdivision commence.

Hence, we view the determination of the applicable absorption rate as an issue of fact for resolution by the BAA in each case, and we perceive no error in the BAA's adoption of the taxpayer's evidence here.

Accordingly, the order of the BAA is affirmed.

ROTHENBERG and BRIGGS, JJ., concur.