**RESOLUTION TRUST CORPORATION,**
Plaintiff–Appellee,

v.

**The BOARD OF COUNTY COMMISSION-ERS OF the COUNTY OF ARAPAHOE, and Joseph Marceny, in his official capacity as Arapahoe County Assessor, Defendants–Appellants.**

No. 94CA0112.

Colorado Court of Appeals,
Div. V.

April 6, 1995.

Rehearing Denied May 11, 1995.

Certiorari Denied Oct. 30, 1995.

**1364**

Gorsuch Kirgis, L.L.C., Malcolm M. Murray, Deborah J. Bennett, Maureen H. Juran, Denver, for plaintiff-appellee.

Peter L. Vana, III, County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, for defendants-appellants.

Opinion by Judge DAVIDSON.

Defendants, the Board of County Commissioners of Arapahoe County, and Joseph Marceny, in his official capacity as Arapahoe County Assessor (the county), appeal from the judgment of the trial court in favor of plaintiff, the Resolution Trust Corporation (RTC). We affirm.

RTC is the owner of certain real property located in Arapahoe County. By appeal to the Arapahoe County Board of Equalization (BOE), RTC protested the tax valuation assigned to the property by the Arapahoe county assessor for the 1988 tax year. The BOE denied the appeal after hearing, and RTC appealed that decision to the trial court.

The trial court reversed the decision of the BOE. Ultimately, after further appeals, the supreme court directed the court of appeals to remand the case to the trial court for reconsideration in light of *El Paso County Board of Equalization v. Craddock*, 850 P.2d 702 (Colo.1993). A division of this court, in turn, directed the trial court to consider whether the county had properly rejected the application of the market absorption rate to its valuation pursuant to the principles discussed in *El Paso County Board of Equalization v. Craddock, supra*. See *Resolution Trust Corp. v. Board of County Commissioners*, 860 P.2d 1383 (Colo.App.1993) (*RTC I*).

On remand, the trial court determined that market absorption rate was applicable and adopted RTC's valuation for the property. This appeal followed.

## I.

The county's primary contention on appeal is that the trial court erred by finding market absorption rate applicable to the valuation of the property. We disagree.

### A.

■ Because selling a number of individual lots takes time, and involves up-front development costs, the market absorption rate "recognizes the time value of a developer's investment by treating the value of individual subdivision lots like payments in an anticipated future annuity stream." *El Paso County Board of Equalization v. Craddock, supra,* 850 P.2d at 705.

Section 39–1–103(14)(b), C.R.S. (1994 Repl. Vol. 16B) specifically authorizes the use of present worth discounting when valuing vacant land which is subdivided to be sold as

individual lots; the present worth of each of the lots is established by: (1) determining the estimated retail price of each lot, (2) arriving at an adjusted retail price by deducting the costs of development that will be incurred in preparation for sale, (3) estimating the time required to sell the lots in order to find the pertinent market absorption rate, and (4) selecting an appropriate discount rate. *Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd.*, 890 P.2d 119 (Colo.1995).

■ Although the market absorption rate must be taken into account when assessing vacant land, its use is not mandatory. Factors which indicate that the market absorption rate is not appropriate include "that the lots are not within a subdivision subject to an approved plat, or that the tracts are not sufficiently similar to be part of the same marketing area, or even that the lots within a subdivision subject to an approved plat are being held as open space, and not being actively marketed for development." *El Paso County Board of Equalization v. Craddock, supra,* 850 P.2d at 707.

■ The county maintains that application of the market absorption rate was properly rejected by the assessor as to the subject property because: (1) the law requiring its consideration did not go into effect until shortly before valuation notices were mailed for the 1988 tax year, and (2) there was enough comparable sales data available to obviate the need to use the market absorption rate. We conclude that neither reason is an appropriate ground for rejecting its use.

Although we agree with the county that the list of factors outlined in *El Paso County Board of Equalization v. Craddock, supra,* is not exclusive, these factors all relate to circumstances which render unnecessary, or incompatible, the basis for the market absorption rate, that is, recognition of the time and up-front development costs associated with selling a number of individual lots. Any additional reason advanced by a county for not applying the market absorption rate should be grounded upon similar concerns.

Accordingly, the fact that the statute was enacted shortly before the valuations were mailed is irrelevant. The county's rejection of the use of the market absorption rate upon that basis was improper.

■ Similarly, we also disagree with the county that application of the market absorption rate was unnecessary because sufficient comparable sales were available.

If valuation is based upon sales of comparable vacant land in bulk without division into lots—typically from one potential developer to another—the sale prices are already discounted to reflect the estimated time and costs of development and marketing. *See Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd., supra.*

On the other hand, if the valuation is based upon the sales of individual lots which are comparable to those within the vacant land, as it was here, the costs of developing and marketing the lots are reflected by the adjusted retail price arrived at through the present worth discounting process. *See Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd., supra.*

Thus, an assessor may rely solely on comparable sales data only when the valuation is based upon comparable sales of vacant land in bulk. When the valuation is based upon comparable sales of individual lots, however, the existence of a sufficient number of comparable sales is not determinative of whether the market absorption rate is applicable.

Under the county's rationale, the market absorption rate would be used infrequently and only as a last resort in lieu of comparable sales data. We perceive no indication, however, that this is the manner in which the General Assembly intended that the market absorption rate was to be used. To the contrary, the market absorption rate is intended to be used in conjunction with comparable sales data in order to insure that the time and up-front development costs connected with selling a quantity of individual lots have been reflected in the valuation. *See El Paso County Board of Equalization v. Craddock, supra.*

We conclude that RTC met its burden of showing that the county did not follow the statutory scheme and that the assessor's valuation did not reflect the actual value of the

property. *See Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990).

■ To the extent that the county now contends that market absorption rate is inapplicable because the property is not and has not been actively marketed or developed, that argument is advanced for the first time on appeal, and we will not address it. *See Hansen v. GAB Business Services, Inc.,* 876 P.2d 112 (Colo.App.1994).

### B.

■ The county argues that, nonetheless, even if the market absorption rate applies, there was an abandoned farm house on one of the three lots at the time of the valuation and therefore that lot is ineligible for the market absorption rate. RTC contends that, to the contrary, this was a "minor structure" and, consequently, the parcel was properly valued as vacant land. We agree with RTC.

■ Section 39–1–103(14)(c)(I), C.R.S. (1994 Repl.Vol. 16B) defines "vacant land" as "any lot, parcel, site, or tract of land upon which no buildings, structures, or fixtures are located." According to the guidelines established by the Property Tax Administrator, the market absorption rate is "only applied to vacant land, i.e. land without a structure. An exception is when the assessor has classified a minor structure on vacant land." *See 3 Assessors Reference Library* 4.5 (Rev. 1995). No definition of "minor structure" is provided.

According to the county, the guidelines established by the Property Tax Administrator are in conflict with § 39–1–103(14)(c)(I), which defines vacant land as property upon which no buildings, structures, or fixtures are located. We do not agree.

It is true that § 39–1–103(14)(c)(I) does not explicitly except minor structures. The guidelines contained in the Assessors Reference Library, however, do contain such an exemption, and these guidelines have been subject to legislative review and approval. The General Assembly has directed the Property Tax Administrator to prepare manuals, procedures, and instructions for appraisals, and the Assessors Reference Li-

brary has been prepared and approved pursuant to that directive. *See* § 39–2–109(1)(e), C.R.S. (1994 Repl.Vol. 16B); *Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd., supra.*

Moreover, the guidelines represent a reasonable interpretation of the statute. Structures which do not contribute to the value of the parcel in any way, or to its current use, do not change the character of otherwise vacant land. In fact, such structures ordinarily must be removed or destroyed before the property may be developed. *See El Paso County Board of Equalization v. Craddock, supra* (in an extensive discussion of the appropriate method of valuation for vacant land, the court cited, without comment, the minor structure exception).

We also conclude that the abandoned farm house met the definition of minor structure.

The county's witness testified that, although he did not have a precise definition of "minor structure," he considered a minor structure to be "a structure that doesn't contribute to the value of the parcel in any way or to its current use." He then stated that he considered "pull barns, windmills, and little bitty pump houses" to be examples of minor structures. He admitted that he had never gone to the property to view the structure and was unaware of its condition.

RTC's expert witness testified that he had visited the property and that, at that time, the house was abandoned, boarded up, dilapidated and, in his opinion, unusable, on an interim basis, as a residence. He further opined that, although he did not think of the house as a "minor structure," he considered it to be a burden on the parcel because it would have to be demolished or moved before the property could be developed. For those reasons, he testified, he assigned no value to the house and considered the parcel to be vacant land.

The trial court accepted plaintiff's expert's opinion and found that the parcel should be deemed vacant land. We agree.

In view of the uncontradicted testimony concerning the actual condition of the house at the time of the valuation, it did not con-

tribute either to the value of the parcel or to its current use. Consequently, even under the county's definition, the house was a minor structure.

## II.

The county, without citation of any authority, next argues that the actual sale of the property in the base year is the best evidence of its value and that, therefore, the court erred in accepting RTC's valuation.

This argument, however, is raised for the first time on appeal, and thus, it is not properly before us. *See Matthews v. Tri–County Water Conservancy District*, 200 Colo. 202, 613 P.2d 889 (1980); *Hansen v. GAB Business Services, Inc., supra.* Moreover, we note that the assessor did not consider the actual sale price as determinative, but only as a check on its valuation.

## III.

■ The county also contends that the trial court erred in accepting RTC's valuation because its appraiser impermissibly considered the "soft costs" of development and used an inappropriate discount factor in calculating the present worth of the property according to the market absorption rate. We reject both of these interrelated contentions.

Deductions for taxes, brokerage fees, and other administrative expenses of development, typically referred to as "soft costs," have been disallowed by amendments to § 39–1–103(14), C.R.S. (1994 Repl.Vol. 16B). Prior to that amendment "soft costs" could be considered. *Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd., supra; see* Colo.Sess.Laws 1988, ch. 268 at 1276–81. Because the valuation here took place prior to the amendment, RTC could properly deduct "soft costs."

A discount factor representing the "present value of an annuity of one dollar per period over the absorption period" has been prescribed by the *Assessors Reference Library* for lots which, like the ones at issue here, are expected to sell individually over time. *See El Paso County Board of Equalization v. Craddock, supra,* 850 P.2d at 706.

RTC's appraiser did not use this discount factor.

The trial court determined, however, that because the deduction of soft costs had been allowed at the time of the valuation, the discount factor used by RTC was appropriate and found that "[t]he Property Tax Administrator's direction to use the discount factor [used by the County] came no sooner than 1989 and only makes sense if soft costs cannot be deducted." *See* 3 *Assessor's Reference Library* 4.23–4.28 (Rev.1995).

This determination is supported by the record, and therefore, we find no error.

## V.

■ Finally, because we may not substitute our judgment for that of the trial court as to factual findings which are supported by the record, we reject the county's contention that the trial court erred by finding that RTC's appraisal value based on comparable sales more accurately reflected market conditions. *See Feit v. Zoller,* 155 Colo. 64, 392 P.2d 593 (1964).

The judgment is affirmed.

STERNBERG, C.J., and ROTHENBERG, J., concur.