**FIDELITY CASTLE PINES, LTD. and Fidelity Associates Limited Partnership, Plaintiffs–Appellants,**

v.

**The STATE of Colorado; Douglas County Assessor; and The Douglas County Board of Equalization, Defendants–Appellees.**

**No. 95CA1951.**

Colorado Court of Appeals.
Div. II.

March 27, 1997.

As Modified on Denial of Rehearing
July 3, 1997.

Certiorari Denied Dec. 2, 1997.

Barry J. Goldstein, Denver, for Plaintiffs–Appellants.

J. Mark Hannen, County Attorney, Thomas W. McNish, Assistant County Attorney, Castle Rock, for Defendants–Appellees.

No Appearance for Defendant–Appellee State of Colorado.

Opinion by Judge MARQUEZ.

Plaintiffs, Fidelity Castle Pines, Ltd., and Fidelity Associates Limited Partnership, appeal a summary judgment in favor of defendants, Douglas County Assessor and the Douglas County Board of Equalization, in which the trial court ruled that § 39–1–103(14)(b), C.R.S. (1994 Repl.Vol. 16B) is constitutional and that plaintiffs' land had been properly valued. We affirm.

Plaintiffs, the owners of vacant land in Douglas County, protested the 1993 and 1994 valuations of their property to the Douglas County Assessor. They contended that, because the assessor did not consider certain indirect costs of development in determining actual value, the appraised value did not represent the actual value of the vacant land. The assessor denied plaintiffs' protests.

On appeal, the Douglas County Board of Equalization (BOE) adjusted the value of plaintiffs' land for 1993 taxes from $15,565,179 to $12,606,198, and similarly reduced its valuation for 1994. However, the BOE also declined to consider indirect costs in arriving at the actual value of the land for taxation purposes.

Plaintiffs then filed their complaint in the trial court claiming again that defendants had wrongly valued their land and also claiming that § 39–1–103(14)(b) is unconstitutional. Plaintiffs asserted that indirect costs, known as "soft costs," include administrative expenses, overhead and profit, sales and market costs (including broker's fees, title insurance, and closing costs), real estate taxes, costs for environmental compliance and weed cutting, and legal and accounting fees. Defendants moved, and plaintiffs cross-moved, for partial summary judgment on these issues. The trial court determined that § 39–1–103(14)(b) did not violate the Colorado Constitution and that the assessor had properly valued the land without considering soft costs.

After further procedural steps, in July 1995, the trial court entered an order upon stipulation of the parties agreeing to the actual value of the parcels for the two years in dispute. This appeal followed.

## I.

▪ Plaintiffs first contend that the trial court erred in ruling that § 39–1–103(14)(b), as amended in 1992, prohibiting assessors from considering the indirect costs of development in ascertaining the assessment value of vacant land under the present worth valuation method, does not violate Colo. Const. art. X, § 3 which requires the assessor to determine the actual value of property. We disagree.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). Here, the parties do not claim that disputed issues of material fact exist.

Colo. Const. art. X, § 3(1)(a), adopted by the electorate in 1982, provides, in pertinent part:

Each property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article within the territorial limits of the authority levying the tax. The actual value of all real and personal property not exempt from taxation under this article shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property not exempt from taxation under this article. Valuations for assessment shall be based on appraisals by assessing officers to determine the actual value of property in accordance with provisions of law, which laws shall provide that actual value be determined by appropriate consideration of cost approach, market approach and income approach to appraisal. . . .

At the time of this amendment, the statute regarding determination of actual value for assessment purposes, provided, in pertinent part:

The assessing officers shall give appropriate consideration to the cost approach, market approach, and income approach to appraisals as required by the provisions of Section 3 of Article X of the state constitution in determining the actual value of vacant land. When using the market approach to appraisal in determining the actual value of vacant land as of the assessment date, assessing officers shall take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the cost of development, any amenities, any site improvements, access and use.

Colo. Sess. Laws 1989, ch. 324, § 39–1–103(14)(b) at 1449.

However, effective June 2, 1992, the General Assembly amended this statutory provision to read:

When using the market [value] approach to appraisal in determining the actual value of vacant land as of the assessment date, assessing officers shall take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the *direct costs* of development, any amenities, any site improvements, access and use.... For purposes of such discounting, direct costs of development shall be taken into account ... For purposes of this paragraph (b), *no indirect costs* of development, including, but not limited to, costs relating to marketing, overhead, or profit, shall be considered or taken into account.

Section 39–1–103(14)(b), C.R.S. (1994 Repl. Vol. 16B) (emphasis added).

Plaintiffs contend that the failure to make an allowance for indirect costs in the present worth analysis results in a substantial overstatement of the actual value of the vacant land and that § 39–1–103(14)(b) conflicts with the constitution both facially and as applied. We disagree.

The General Assembly has plenary legislative powers, but these powers are subject to express or implied restraints in the constitution. The General Assembly cannot enact a law contrary to those constitutional restraints. Where the language of the constitution is plain and its meaning clear, that language must be enforced as written. *Colorado Ass'n of Public Employees v. Lamm*, 677 P.2d 1350 (Colo.1984).

A statute is presumed constitutional, and the challengers of the constitutionality must establish that the statute is unconstitutional beyond a reasonable doubt. *Central Colorado Water Conservancy District v. Simpson*, 877 P.2d 335 (Colo.1994).

An assessor has a duty to determine the actual value of all real and personal property for property tax purposes. The methods which the assessor may use in determining actual value are prescribed by statute. Section 39–1–103(5)(a), C.R.S. (1994 Repl.Vol. 16B). However, when using the market approach in valuing vacant land, an assessor is to take into account several factors, including the anticipated market absorption rate. Section 39–1–103(14)(b); *see also El Paso County Board of Equalization v. Craddock*, 850 P.2d 702 (Colo.1993).

Here, plaintiffs' property was assessed using the market approach, including the present worth valuation method. The parties agree that such method was appropriate for the land in question. They disagree, however, on the constitutional validity of a statutory provision that specifically excludes indirect costs from consideration in determining actual value.

■ As quoted above, Colo. Const. art. X, § 3(1)(a), provides that the actual value of real property is to be determined by application of general laws designed to effect just and equalized valuations. Thus, the General Assembly may establish standards and procedures for the assessment, levy, and collection of property taxes and those laws may set forth the method for determining the actual value of property. *See* Colorado Legislative Council, Research Publ. # 269, An Analysis of 1982 Ballot Proposals (1982). Accordingly, the statute at issue is within the authority provided under the constitution.

A limitation on the General Assembly's choice of a valuation scheme is the requirement that assessors consider particular appraisal methods in determining actual values. *Carrara Place, Ltd. v. Arapahoe County Board of Equalization*, 761 P.2d 197 (Colo. 1988) (holding that the use of the base year method for valuing property is not unconstitutional). Here, the assessors used one of the methods in the statute for valuing the property.

■ Plaintiffs point to materials in the record which document that, in the real estate industry, indirect costs are uniformly considered by appraisers in determining the market value of vacant parcels of land. *See, e.g., Encyclopedia of Real Estate Appraising* 738 (3d ed. 1978). However, the valuation for ad valorem taxation purposes need not

equate with the valuation methods for appraisals of vacant land for other purposes. *See Carrara Place, Ltd. v. Arapahoe County Board of Equalization, supra* (rejecting the argument that the assessor's values were invalid because they failed to reflect economic data current at the time of the appraisal).

■ Within the context of securing equalized and just valuations, the constitution authorizes the General Assembly and not this court to determine methods of determining actual value. *See Carrara Place v. Board of Equalization, supra; Leavell–Rio Grande v. Board of Assessment Appeals,* 753 P.2d 797 (Colo.App.1988); *see also Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27, 36 (Colo.1990) ("the constitutional scheme for achieving just and equalized valuations requires that taxes be 'levied, assessed, and collected under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations'").

In adopting the statutory change at issue here, the General Assembly sought to eliminate the wide disparity in the treatment of vacant land by amending the statute to prohibit consideration of indirect costs. *See* § 39–1–103(14)(a), C.R.S. (1994 Repl.Vol. 16B).

In our view, since all vacant land is valued without consideration of indirect costs, the law secures equalized valuations. In addition, while our supreme court in *Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd.,* 890 P.2d 119 (Colo.1995) rejected the notion that deduction of indirect costs promotes a lack of uniformity in the valuation of vacant land, we do not read that opinion as foreclosing the General Assembly from eliminating the use of indirect costs in order to equalize valuation pursuant to the constitution. Thus, we conclude that the trial court did not err in upholding the constitutionality of § 39–1–103(14)(b).

## II.

■ Plaintiffs also contend that the trial court erred in ruling that § 39–1–103(14)(b), as amended in 1992, does not violate Colo. Const. art. X, § 3 by creating a separate class of commercial property. Plaintiffs assert that disregarding indirect costs would result in substantial overvaluation of this property and that there is no legitimate policy reason to deny a deduction for these expenditures. We disagree.

Colo. Const. art X., § 3, prior to its amendment in 1982, provided that the General Assembly had authority to classify property which could be valued by different methods for assessment of ad valorem taxes as long as "all taxes shall be uniform upon each of the various classes of real and personal property located within the territorial limits of the authority levying the tax...." Colorado courts based the General Assembly's power to separate property into classes and to assign a different valuation standard to each class upon the preamendment constitutional language referring to uniformity among the "various classes" of property. *See Senior Corp. v. Board of Assessment Appeals,* 702 P.2d 732 (Colo.1985); *American Mobilehome Ass'n v. Dolan,* 191 Colo. 433, 553 P.2d 758 (1976); *District 50 Metropolitan Recreation District v. Burnside,* 167 Colo. 425, 448 P.2d 788 (1968); *M.H.C. Realty Corp. v. Board of County Commissioners,* 31 Colo.App. 564, 506 P.2d 762 (1972).

However, the "various classes of property" language was eliminated from the constitution by the 1982 amendment. Instead, as quoted above, the constitution now provides that property tax levies must be "uniform" on non-exempt property.

One argument in favor of the amendment was that it would be:

a major step in achieving uniformity in the determination of the actual value of property for tax purposes for various classes of property subject to property taxation in Colorado.... By limiting the authority of the General Assembly to adjust the level of assessment for various classes of property, the amendment would protect the tax base of local governments....

Colorado Legislative Council, Research Publ. # 269, *supra.* See also *Carrara Place, Ltd. v. Arapahoe County Board of Equalization, supra* (while not controlling, arguments in the Legislative Council research publication

provide important insight into the electorate's understanding of the amendment when it was passed); *In re Proposed Initiative Pertaining to Public Rights in Waters II,* 898 P.2d 1076 (Colo.1995) (Legislative Council publication is a helpful source equivalent to the legislative history of a proposed amendment).

The General Assembly declared in 1988 that, as to valuation, there appeared to exist a wide disparity in the treatment of vacant land by the assessing officers of the various counties and that the methods of appraisal then being used by assessing officers for such valuation remained unclear. Section 39–1–103(14)(a), C.R.S. (1994 Repl.Vol. 16B). Thus, by creating a system by which all vacant land is valued based upon the same considerations, the General Assembly created a uniform method for assessing the value of such land for property taxation purposes.

Plaintiffs contend that the statute at issue here is comparable to the "special treatment" statutes addressed in an attorney general opinion concluding they conflicted with the 1982 amendment to the constitution and had been repealed by implication. *See* Attorney General File No. 0AG8303218–LM (1983). However, while these statutes provided special treatment for certain classes of property, for example, deferment of an increase in value for remodeled residential property, *see* § 39–5–105(2)(a), C.R.S. (1982 Repl.Vol. 16B), or authorizing a special method of valuing real property improved with an alternative energy device, *see* § 39–1–104(6), C.R.S. (1982 Repl.Vol. 16B), the statute at issue here creates methods of finding actual value for *all* vacant land, not just some types of vacant land or vacant land in a certain condition. Uniformity of taxation is required within a class, not between or among different classes. *Jensen v. City & County of Denver,* 806 P.2d 381 (Colo.1991).

Consequently, because no special classes are created by legislative enactment, the statute does not violate Colo. Const. art. X, § 3.

## III.

■ Finally, plaintiffs contend that the trial court erred in ruling that § 39–1–103(14)(b), as amended in 1992, does not violate Colo. Const. art. X, § 3(1)(a) by creating an unreasonable classification of commercial property. Plaintiffs specifically argue that the statute creates an unreasonable classification, with no legitimate state interest, between owners of vacant land held for development who cannot deduct interest costs and owners of buildings held for production of income who can. We reject this contention.

■ The General Assembly is the final authority as to the state's public policy declared in the statutes. *Isaak v. Perry,* 118 Colo. 93, 193 P.2d 269 (1948). It is not the role of the courts, in considering the constitutionality of a statute, to determine whether particular legislation is wise or desirable. *Delta Sales Yard v. Patten,* 870 P.2d 554 (Colo.App.1993), *aff'd,* 892 P.2d 297 (Colo. 1995).

However, to withstand a constitutional challenge, a statutory provision must, at a minimum, have a reasonable basis in fact and bear a reasonable relationship to a legitimate government interest. *Passarelli v. Schoettler,* 742 P.2d 867 (Colo.1987).

Thus, the burden is on the party challenging the statute to establish beyond a reasonable doubt that the statute lacks a rational relationship to a legitimate governmental interest. *Ferguson v. People,* 824 P.2d 803 (Colo.1992); *Colorado Department of Social Services v. Board of County Commissioners,* 697 P.2d 1 (Colo.1985).

In assessing valuation for commercial property, the assessor determines the actual value of property by appropriate considerations of three methods of real property assessment: the cost approach, the income approach, and the market approach. *See* § 39–1–103(5)(a), C.R.S. (1994 Repl.Vol. 16B). However, as in the present case, because of the lack of cost and income information, use of a market approach, and thus present worth valuation, is the only means available to determine value. It is because of this difference in valuing commercial and vacant land that the statute provides for other factors to be considered in valuing vacant land. *See El Paso County Board of Equalization*

*v. Craddock, supra.* The General Assembly has determined that there appears to exist a wide disparity in the valuation of vacant land and that the exclusion of indirect costs from the list of evaluative factors would secure an equalized valuation of such land. *See* § 39-1-103(14)(a).

Direct costs of development, deductible pursuant to § 39-1-103(14)(b), include costs required for planning, engineering, and physical installation of tangible development improvements or amenities necessary to convert a vacant lot into a building site. 3 *Assessor's Reference Library: Land Valuation Manual* 4.35. (rev. 1/96) (*Land Valuation Manual*). These may include costs for streets, street lighting, sidewalks, sanitary and drainage facilities, and insurance directly related to development construction. *Land Valuation Manual* at 4.10.

Conversely, indirect development costs include costs not directly part of the planning, engineering, and installation of tangible development improvements or amenities necessary to convert a vacant parcel of land into a building site. These include, but are not limited to, sales marketing costs, taxes, entrepreneurial insurance costs, developer and subdeveloper profit, and general administrative overhead. *Land Valuation Manual* at 4.10, 4.36.

In *Leavell–Rio Grande Central Associates v. Board of Assessment Appeals, supra,* taxpayers protested their property tax assessment asserting that the assessor had unlawfully determined actual value because he had neglected to consider rent abatements in his valuation equation. This, they argued, depressed the actual value of their properties.

In rejecting the taxpayers' argument, a division of this court found that, since economic factors which encourage rent abatement leasing are not specifically included in the statutory list of unusual circumstances upon which the assessor may rely in calculating the actual value of commercial property, the assessor lawfully excluded rent abatement from his consideration of actual value. *See also Carrara Place, Ltd. v. Arapahoe County Board of Equalization, supra,* 761 P.2d at 204 ("the constitution delegates to the General Assembly, and not to [the court],

the difficult task of implementing a valuation system that satisfies the ideals of a 'just and equalized' system of valuations for assessments"); *Leavell–Rio Grande v. Board of Assessment Appeals, supra* (the method by which valuation for taxation purposes is to be formulated is a legislative function and is not a proper subject for judicial determination).

Plaintiffs rely on *Carbon County Sheep & Cattle Co. v. Board of Commissioners,* 60 Colo. 224, 152 P. 903 (1915) for the proposition that the distinction in valuation between vacant land and other commercial property, like the distinction in the statute that permitted counties to tax livestock driven into the county for grazing purposes, but exempted livestock driven into the county for other purposes from the tax, is unconstitutional. The court, in that case, determined that the statute violated the then existing uniformity clause because the statute did not treat all livestock alike.

However, unlike the statute at issue in *Carbon County,* the statute at issue here treats all vacant land alike. While the statute allows for certain special considerations in the valuation of vacant land, the General Assembly did not carve out certain vacant land to be valued at a different rate, or by a different approach.

It is not our role to determine whether the legislation is wise or desirable. *See Delta Sales Yard v. Patten, supra.* Again, we find the General Assembly's purpose in enacting the amendment to be rationally related to a legitimate government interest. Accordingly, there is no constitutional violation in the classification effected by the statute.

The judgment is affirmed.

RULAND and TAUBMAN, JJ., concur.