**Jon Chris JENSEN and Robert Roome, Plaintiffs–Appellants,**

v.

**The CITY AND COUNTY OF DENVER, a municipal corporation; The City Council, City and County of Denver, and all members thereof; Federico Peña, Mayor of the City and County of Denver; Colfax on the Hill Business Improvement District, and Marty Amble, the Executive Director thereof; The Board of Directors of Colfax on the Hill Business Improvement District, and Jack Robinson, Tom Manley, James Beatty, Joseph Figueroa, and David Atkinson, the Directors thereof; and The State of Colorado, Defendants–Appellees.**

No. 90SA51.

Supreme Court of Colorado, En Banc.

Feb. 25, 1991.

---

**382**

Nancy P. Bigbee and Sally S. Townshend, Denver, for plaintiffs-appellants.

Patricia L. Wells, Denver City Atty., John L. Stoffel, Jr., Asst. City Atty., Denver, for defendants-appellees City and County of Denver, The City Council, City and County of Denver, and all members thereof, and Federico Peña, Mayor of the City and County of Denver.

Susan E. Burch, Denver, for defendants-appellees Colfax on the Hill Business Improvement Dist., Amble, and the Bd. of Directors of Colfax on the Hill Business Improvement Dist.

Justice MULLARKEY delivered the Opinion of the Court.

This is an appeal[1] from a Denver District Court decision holding that the Denver City Council did not abuse its discretion or exceed its jurisdiction when it created the Colfax on the Hill Business Improvement District pursuant to the Business Improvement District Act, §§ 31–25–1201 to –1228, 12B C.R.S. (1990 Supp.) (the "BID Act"). In reaching its decision, the district court held that the BID Act did not violate the Uniformity Clause of the Colorado Constitution, Article X, Section 3(1)(a). We affirm on both issues.

---

**1.** This court has jurisdiction because this case is an appeal from the final judgment of a district court in which one issue involves the constitutionality of a statute. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

## I.

In 1988, the legislature enacted the BID Act which allows municipalities to create Business Improvement Districts (BIDs) within their boundaries. Under section 31–25–1205, a municipality may form a BID if it receives a petition signed by persons who own real or personal property equal to at least fifty percent of both the assessed valuation of the service area and the total acreage in the proposed district.[2] The "service area," defined in section 31–25–1203(10), is the area within the boundaries of the district. The district consists of all commercial property located in the service area and includes property in the service area which later is changed from residential or agricultural property to commercial property. *Id.* Pursuant to section 31–25–1213, the BID may raise revenue by levying an *ad valorem* tax upon all commercial property in the district. The parties stipulated that residential property, including single family residence, boarding/rooming houses and apartment rental properties are not taxed under the BID Act. *See* § 31–25–1203(10) (residential property within service area may not be taxed).

In March 1989, the BID organizers filed petitions with the City and County of Denver seeking the creation of the Colfax on the Hill BID.[3] Although not required by the BID Act, the petitioners attached copies of a proposed operating plan with specified tax rate and budget. The plaintiffs (collectively referred to as "Jensen") are owners of commercial property located within the boundaries of the BID who oppose the creation of the proposed district.

Following the issuance of a public notice, the Denver City Council held a public hearing on June 19, 1989 pursuant to section 31–25–1206 of the BID Act. At the hearing, Jensen submitted petitions in opposition to the proposed district and alleged that the petitions submitted in favor of the proposed district should be dismissed because the petitions were deficient. Among the deficiencies Jensen alleged were that: (1) certain property owners who had signed the petition had since sold their property, (2) certain property owners who originally signed the petition in favor of the proposed district later signed a petition against the proposed district, (3) the verification of property ownership was not current as of the date of the hearing, and (4) the proponents submitted an amended version of the operating plan and budget at the hearing that contained different terms from the operating plan and budget attached to the petition. The City Council subsequently postponed voting on the proposed district until June 26, 1989 so that the administration (i.e., the City Attorney's office and the Department of Public Works) could investigate the protests.

In the ensuing investigation, the city administration determined that some of the signatures supporting creation of the BID were indeed not valid because the signatories either no longer owned property in the BID or had signed a later petition opposing the proposed BID. The administration then recomputed the relevant percentages and reported to the City Council that creation of the BID was supported by the owners of 52.76% of the total assessed valuation in the service area and 52.361% of the total acreage in the district. In verifying that the signatures belonged to property owners within the service area, the administration used information that was current as of March 1989. The administration's report also concluded that the BID organizers were authorized by virtue of the petition to submit the amended operating plan and budget at the hearing.

---

**2.** Section 31–25–1205 contains additional requirements that are not at issue in this case.

**3.** The service area boundaries are Sixteenth Avenue on the north, the alley east of Josephine Street on the east, Fourteenth Avenue on the south, and Grant Street (south of Colfax Avenue) and the alley between Sherman and Grant Streets (north of Colfax Avenue) on the west.

On June 26, 1989, after receiving the administration's report, the City Council enacted an ordinance creating the proposed BID and adopting the amended operating plan and budget. Subsequently Jensen filed a complaint requesting judicial review of the City Council's action pursuant to C.R.C.P. 106(a)(4), declaratory relief pursuant to C.R.C.P. 57 and injunctive relief under 42 U.S.C. § 1983. The district court held that the City Council acted within its discretion and jurisdiction in creating the district. It also held that the BID Act did not violate Article X, Section 3(1)(a), of the Colorado Constitution. Jensen now brings this appeal.

## II.

■ We address first Jensen's claim that the BID Act's taxing provisions, sections 31–25–1213 to –1218, violate Article X, Section 3(1)(a), of the Colorado Constitution. At the outset, we note that statutes are presumed to be constitutional and that Jensen, as the moving party, must establish that the BID Act is unconstitutional beyond a reasonable doubt. *See Colorado Dep't of Social Serv. v. Board of County Comm'rs*, 697 P.2d 1, 10 (Colo.1985).

■ Article X, Section 3(1)(a), the Uniformity Clause, states:

Each property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article located within the territorial limits of the authority levying the tax.

As we have noted in the past, this section applies only to *ad valorem* taxes and requires the "burden of such taxation to be uniform on the same class of property within the jurisdiction of the authority levying the tax." *Colorado Dep't of So-*

*cial Serv. v. Board of County Comm'rs*, 697 P.2d at 11.[4]

Under section 31–25–1213 of the challenged BID Act, the BID "has the power to levy and collect *ad valorem* taxes on and against all taxable commercial property, as defined in section 31–25–1203(2), within the boundaries of the district." By defining "commercial property" in section 31–25–1203(2) as "any taxable real or personal property which is not classified for property tax purposes as either residential or agricultural," the BID Act incorporates the definitions already used in the general tax statutes. *See* § 39–1–102(5.5), (14.3), (14.4), (14.5), 16B C.R.S. (1990 Supp.). These definitions correspond to Article X, Section 3(1)(b) of the Colorado Constitution which has defined the classification "residential real property" since the section was amended in 1982 as "all residential dwelling units and the land, as defined by law, on which such units are located, and mobile home parks, but shall not include hotels and motels...."

Jensen claims that the BID Act, insofar as it exempts apartment rental properties and boarding/rooming houses used on a long-term basis, violates the Uniformity Clause. Jensen asserts that these properties benefit from the improvements funded by the BID Act and thus properly should be taxed as commercial property. Since such properties are treated as residential under the BID Act, Jensen concludes that the tax classification adopted by the legislature results in unequal treatment of two types of property belonging in the same classification. We do not agree.

■ We have construed Article X, Section 3, to allow the legislature to make reasonable classifications for tax purposes. *See Senior Corp. v. Board of Assessment Appeals*, 702 P.2d 732, 738 (Colo.1985); *American Mobile Home Ass'n, Inc. v. Dolan*, 191 Colo. 433, 438, 553 P.2d 758, 762 (1976); *District 50 Metro. Recreation Dist.*

**4.** In 1982, Article X, Section 3 was amended to change the way actual value of property is determined in order to achieve uniformity in property tax determination for the different classes of taxable property. The new amendment provided that the valuation for assessment of residential real property would be set at a lower percentage than other taxable property. *See Legislative Council of Colorado, An Analysis of 1982 Ballot Proposals*, Research Publ. No. 269, 1–9 (1982).

*v. Burnside,* 167 Colo. 425, 431, 448 P.2d 788, 790–91 (1968). Uniformity of taxation is required within a class, not between or among different classes.

In this instance, the legislature enacted the BID Act primarily to "promote the continued vitality of commercial business areas within municipalities." § 31–25–1202(1). To achieve this aim, the legislature provided that a BID would have the power to impose an *ad valorem* tax on "commercial property" rather than on "residential property." Incorporated into the BID Act are the definitions of residential property from the general property tax definitions that correspond to the definition of residential property contained in Article X, Section 3(1)(b). By this constitutional provision, hotels and motels are excluded from the residential property. "Hotels and motels" are defined to include lodging which is "predominantly used on an overnight or weekly basis." § 39–1–102(5.5), 16B C.R.S. (1990 Supp.). Apartments and boarding/rooming houses used on a long term basis do not come within the definitions of hotel and motel and properly are included within the definition of residential property.

The distinction that Jensen attacks thus has its origins in Article X, Section 3(1)(b), which is a companion constitutional provision to the Uniformity Clause; it directly follows and modifies subsection (1)(a), the subsection containing the Uniformity Clause. Both provisions were adopted by the voters in the 1982 general election. H.R.J. Res. 1005, 54th Leg., 1983 Colo.Sess. Laws 1675, 1682. Clearly then, a classification based on Article X, Section 3(1)(b), is reasonable and does not violate the Uniformity Clause found in the exact same section. Moreover, we do not view the legislature's adoption of the classification as unreasonable given the purpose of the BID Act. Accordingly, Jensen has failed to prove that the BID Act is unconstitutional beyond a reasonable doubt and we affirm the trial court ruling.[5]

### III.

We now address Jensen's second claim challenging the trial court's decision that the Denver City Council substantially complied with the statutory requirements in creating the proposed BID. Jensen brings this action under C.R.C.P. 106(a)(4).[6] The standard of review under this provision is whether the government body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion. We have construed this rule to mean that the district court should affirm the governing body where there is "any competent evidence" to support its decision. *See Bauer v. City of Wheat Ridge,* 182 Colo. 324, 327, 513 P.2d 203, 204–205 (1973).

To determine whether the City Council abused its discretion or exceeded its jurisdiction, we must examine the dictates of the BID Act. Section 31–25–1207 outlines the procedure that the City Council must follow. First, on the date of the hearing, the City Council "shall ascertain, from the tax rolls of the county or counties in which the district is located, the total valuation for assessment of the taxable real and personal property in the service area and the classification of taxable property." Second, "[i]f it appears that said petition is not signed in conformity with this part 12, the governing body shall dismiss the petition...." If, however, "it appears that an organization petition has been duly signed and presented in conformity with this part 12 and that the allegations of the organization petition are true, the governing body

---

5. We need not reach Jensen's third claim for injunctive relief under 42 U.S.C. § 1983 since we find the BID Act to be constitutional.

6. C.R.C.P. 106(a), 7A C.R.S. (1990), provides in relevant part: "In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in the Colorado Rules of Civil Procedure: ... (4) Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law: (I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer."

... may, in its sole discretion, declare the district organized, . . . ."

Section 31–25–1205 sets out the requirements with which the organizers must comply when submitting the petitions. Jensen contends that the City Council did not properly determine that the requirement found in subsection (2) was followed. This section provides:

> The petition shall be signed by persons who own real or personal property in the service area of the proposed district having a valuation for assessment of not less than fifty percent, or such greater amount as the governing body may provide by ordinance, of the valuation for assessment of all real and personal property in the service area of the proposed district and who own at least fifty percent, or such greater amount as the governing body may provide by ordinance, of the acreage in the proposed district.

§ 31–25–1205(2). The record indicates that, prior to the hearing, the city administration verified that the BID petitions were signed by property owners of at least fifty percent of the assessed valuation of real and personal property in the service area and fifty percent of the total acreage in the proposed district as of March 1989. As discussed above, Jensen challenged the city administration's calculations and the City Council postponed consideration of the BID petitions until the alleged deficiencies could be investigated. Once the investigation showed that some of the signatures supporting the creation of the proposed district were invalid, the city administration recalculated the relevant percentages to reflect the lower representation.

Even after the recalculations, however, the signatures still represented more than fifty percent of the assessed valuation in the service area of the proposed district and total acreage of the district. Absent

further evidence that the petitions were deficient, we must presume that the City Council properly made its determination that the signatures represented the requisite amount of property owners. A "presumption of [validity and] regularity supports the official acts of public officials and in absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); *City of Colorado Springs v. District Court*, 184 Colo. 177, 181, 519 P.2d 325, 327 (1974). Thus, once the City Council adopted the administration's revised percentage determinations made in response to protests raised at the hearing, we find that the City Council complied with the statute.

■ Jensen argues, however, that the City Council misinterpreted the requirements of section 31–25–1207 of the BID Act when it verified the signatures. He construes this provision to require the City Council to determine the percentage of property owners represented with respect to value and acreage as of the date of the hearing. He asserts that because the information used to verify the property ownership was current as of March 1989 instead of June 26, 1989, the date of the hearing, the petition was deficient and should have been dismissed. Jensen's argument must fail.

Section 31–25–1207(1) specifically states that the total valuation for assessment and the classification of taxable property shall be ascertained from the tax rolls of the county. Because the tax rolls are prepared yearly by the assessor,[7] it is evident that the legislature did not contemplate the time-consuming and costly up-to-the-minute title searches that would be required by

---

7. Section 39–5–123(1), 16B C.R.S. (1990 Supp.), provides: "[T]he assessor shall complete the assessment roll of all taxable property within his county, and no later than August 25 in each year he shall prepare therefrom two copies of the abstract of assessment, and in person, and not by deputy, shall subscribe his name, under oath, to the following statement, which shall be a part of such abstract: 'I, _____, the

assessor of _____ county, Colorado, do solemnly swear that in the assessment roll of such county I have listed and valued all taxable property located therein and that such property has been assessed for the current year in the manner prescribed by law and that the foregoing abstract of assessment is a true and correct compilation of each schedule.'"

Jensen's theory. Due to the date when the hearing occurred, the tax rolls last certified would have been current up to mid–1988. Since the Denver City Council used data current as of March 1989, it more than satisfied the property ownership verification requirements.

■ Last, we address Jensen's claim that the subsequent submission of the amended operating plan and budget invalidated the petitions since the petitions had been circulated with a different operating plan and budget attached. Jensen does not contend that the amendments were substantial or that those who signed the petition were misled because of the changes later made.[8]

Section 31–25–1211 provides, "No district created under the provisions of this part 12 shall issue bonds, levy taxes, fees, or assessments, or provide improvements or services unless a municipality has approved an operating plan and budget for the district." There is no requirement in the statute that the operating plan and budget be circulated with the petition. Although the record indicates that prior to filing the petition, the organizers may submit the operating plan and budget for approval by the City Planning Office, they are not required to do so. This practice is designed to insure against delays later in the organizing process. Furthermore, section 31–25–1205(2)(d) makes explicit that the organizers listed on the petition have "the power to enter into agreements relating to the organization of the district" which indicates that they are authorized to change the operating plan and budget. Thus, it is apparent that the validity of the petitions is not dependent upon the presence of an operating plan and budget.

Accordingly, we agree with the trial court's determination that the City Council complied with the statute[9] and neither abused its discretion nor exceeded its jurisdiction when it declared the proposed district organized.

Judgment affirmed.

---

8. The amended plan was the same as the operating plan and budget circulated with the petitions except for three changes. The mill levy was raised from 5.77 to 5.8 mills in response to a decrease in the total valuation of commercial-use property in the district. Two restrictive provisions, a $175,000 per year budget cap and a three-year sunset provision for the new district, were added in response to comments from property owners who had signed the petitions.

9. The trial court properly did not make any determination regarding the genuineness of the signatures since section 31–25–1207(2) provides that, "[T]he findings of the governing body upon the question of the genuineness of the signatures and all matters of fact incident to such determination shall be final and conclusive." *See People ex rel. Setters v. Lee,* 72 Colo. 598, 604, 213 P. 583, 587 (1923); *Kaiser v. City of Lakewood,* 33 Colo.App. 239, 244, 517 P.2d 471, 474 (1973).