The **RESOLUTION TRUST CORPORATION, Plaintiff– Appellee,**

v.

The **BOARD OF COUNTY COMMIS- SIONERS OF the COUNTY OF ARAP- AHOE and Joseph Marceny, in his offi- cial capacity as Arapahoe County As- sessor, Defendants–Appellants.**

**No. 91CA0640.**

Colorado Court of Appeals, Div. I.

Sept. 9, 1993.

Gorsuch, Kirgis, Campbell, Walker and Grover, Malcolm M. Murray, Deborah J. Bennett, Denver, for plaintiff-appellee.

Peter Lawrence Vana III, Arapahoe County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, for defendants-appellants.

Opinion by Chief Judge STERNBERG.

This appeal by the assessor and the Board of County Commissioners of Arapa-

hoe County (county) arises from a judgment in which the district court lowered the county's 1988 valuation of vacant commercial land owned by Resolution Trust Company (taxpayer) from $7,987,944 to $3,408,424.

In a previous decision, this court affirmed in part, reversed in part, and remanded the case for further proceedings. *Resolution Trust Co. v. Board of County Commissioners*, (Colo.App. No. 91CA0640, September 3, 1992) (not selected for official publication). On certiorari review, the supreme court vacated the judgment of this court and remanded with directions that we reconsider in light of *El Paso County Board of Equalization v. Craddock*, 850 P.2d 702 (Colo.1993). Having now received supplemental briefs from the parties and reconsidered the issues, we reverse and remand with directions.

The taxpayer received a notice of valuation in May 1988, and although it was the same valuation set in 1987 because it was within the same base year period, taxpayer filed protests to the assessor and the County Board of Equalization. Those protests were denied, and the taxpayer appealed to the district court for a trial *de novo* pursuant to § 39–8–108, C.R.S. (1993 Cum.Supp.).

The court found that the 27.61–acre property had been divided for tax purposes into three parcels, all of which were zoned mixed-use planned unit development. It further found that, with the exception of an abandoned residence on Parcel 1, there were no improvements on the property. The court also found that the property was sold in December 1984 in an arm's-length transaction, but that the comparable sales used by both the county and the taxpayer's expert had not been confirmed as arm's-length transactions.

Two employees of the assessor's office, who testified as experts, indicated that, after considering the three approaches to valuation required by § 39–1–103(5)(a), C.R.S. (1993 Cum.Supp.), they applied the market approach, using three comparable sales of undeveloped property which indicated a range in value from $6.25 to $12 per square foot. They also considered the actual sale of the property in the base year period for $5,800,000, making adjustments for development which occurred between the sale date and January 1, 1988. Based upon this analysis, they placed an actual value on the subject property of $7.20 per square foot. They also valued the abandoned residential improvement on Parcel 1 separately at $38,787, for a total valuation of $7,987,944.

The taxpayer's expert testified that he used both the market approach and a projected income approach in his land valuation. He used eight comparable sales within the base year period, all but one of which were different from the comparable sales used by the county, and most of which were adjusted sales of developed, rather than undeveloped properties. These sales reflected a range in value between $1.93 and $7.91 per square foot. In his projected income approach, the taxpayer's expert assumed that the three parcels would be sold over a period of time, and accordingly, he discounted the property's present worth, after deducting taxes, special assessments, and administrative expenses. Based upon this analysis, he valued the property at $5.50 per square foot for Parcel 1, $5 per square foot for Parcel 2, and $4 per square foot for Parcel 3, for a total of $3,408,424. He did not value the abandoned residence.

The district court held that, by showing the county had not considered a market absorption rate analysis, the taxpayer had met its burden of rebutting the presumption that the county's assessment was correct.

It then concluded that the taxpayer's expert had presented competent evidence demonstrating that he had followed the statutory provisions for valuing vacant land. It equated his projected income analysis with a market absorption rate analysis, and, finding that his approach placed "a

much fairer actual value on the subject property," it entered a judgment adopting the taxpayer's valuation for the property.

After reconsideration in light of *El Paso County Board of Equalization v. Craddock, supra,* we conclude that the trial court rejected the county's valuation based on an incorrect legal standard. Accordingly we remand for a new hearing consistent with this opinion.

## I.

██ Initially, we reject the county's argument, based upon *24, Inc. v. Board of Equalization,* 800 P.2d 1366 (Colo.App. 1990), that in order to challenge a valuation in the second year of a base year period, the taxpayer must show the existence of an unusual condition. In *24, Inc.,* we held that unusual circumstances must exist before *an assessor* may revalue property; we did not address the statutory right of a taxpayer to challenge an incorrect valuation in the second year of a two-year base period. *See* § 39–5–122.5, C.R.S. (1993 Cum.Supp.).

## II.

The county next contends that the taxpayer failed to overcome the rebuttable presumption that the assessor's valuation was correct. It argues that § 24–4–106, C.R.S. (1988 Repl.Vol. 10A) requires the district court to uphold the county's decision unless it was without substantial support in the record. On the other hand, the taxpayer asserts that, if the assessor did not comply with the requirements of § 39–1–103, C.R.S. (1993 Cum.Supp.), its valuation must be rejected. We conclude that, because the court applied an incorrect legal standard when it rejected the county's valuation of the parcels, we cannot determine the validity of the assessor's valuation.

██ Because § 39–8–108, C.R.S. (1993 Cum.Supp.) allows a trial court to conduct a de novo review of valuation for assess-

ment confirmed by a county board of equalization, the Administrative Procedure Act is not the controlling procedural statute. Rather, the taxpayer need only rebut the presumption of a correct valuation by a preponderance of the evidence. *B.C., Ltd. v. Krinhop,* 815 P.2d 1016 (Colo.App.1991). And, a taxpayer who shows that the assessor failed to comply with statutory requirements for calculating property tax assessments meets this burden of proof. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990).

██ Section 39–1–103(5), C.R.S. (1993 Cum.Supp.) requires the assessor to give appropriate consideration to the cost, market, and income approaches in determining the actual value of real property. We have held that if the nature of the property rules it out, inapplicable approaches to value need not be considered or documented. *Creekside at DTC, Ltd. v. Board of Assessment Appeals,* 811 P.2d 435 (Colo.App. 1991). We have also recognized that, in cases involving vacant land, the cost or the income approach may not be appropriate. *Sunbelt Service Corp. v. Board of Assessment Appeals,* 802 P.2d 1199 (Colo.App. 1990).

However, when the market approach is used to determine the actual value of vacant land, § 39–1–103(14)(b), C.R.S. (1993 Cum.Supp.) states that:

> [A]ssessing officers *shall* take into account, but need not limit their consideration to, the following factors: The anticipated market absorption rate, the size and location of such land, the direct costs of development, any amenities, any site improvements, access, and use. (emphasis added)

Here, the trial court found that the assessor considered all approaches to valuation and concluded that only the market approach was applicable. The court held that, pursuant to § 39–1–103(14)(b), the assessor was then required to consider and apply the market absorption rate, specifi-

cally rejecting the assessor's contention that it could consider the absorption rate and then disregard its use. Because the court found that the assessor had failed to apply the market absorption rate, it rejected the assessor's valuation of the subject property.

In *El Paso County Board of Equalization v. Craddock, supra,* the supreme court interpreted the market absorption rate requirement of § 39–1–103(14)(b). The court held that, although the anticipated market absorption rate must be *considered* when assessing vacant land, its *application* is not mandatory. The court stated that the assessor may take into account other factors, including the similarity of the tracts or their anticipated use, which may lead to the conclusion that the application of the market absorption rate is not appropriate. The assessor must document those factors to permit meaningful review of its decision.

Under the rule of *Craddock,* the trial court erred in interpreting § 39–1–103(14)(b) as requiring both consideration *and* application of the market absorption rate, and its rejection of the assessor's valuation was thus error. The assessor must be given the opportunity to present evidence of its consideration of the market absorption rate and the rationale behind the decision not to apply it. Such evidence must be analyzed according to the standard set forth in *Craddock.*

Accordingly, we reverse the district court's conclusion that the assessor's valuation of the unimproved parcels was erroneous because he failed to follow the statutory requirements of § 39–1–103(14)(b) and remand for further findings consistent with this opinion and with *El Paso County Board of Equalization v. Craddock, supra.*

### III.

If the county's valuation is reinstated, the taxpayer contends that the value of Parcel 1 should not include the value of the structure. Relying on *Vail Associates, Inc. v. Board of Assessment Appeals,* 765 P.2d 593 (Colo.App.1988), the taxpayer argues that because the structure on Parcel 1 was abandoned and uninhabited and did not contribute to the value of the property, it should have been disregarded rather than valued separately. We agree.

The supreme court noted in *El Paso County Board of Equalization v. Craddock, supra,* that the Property Tax Assessor's manual provides criteria to assist an assessor in determining when to apply present worth discounting. The criteria indicate that it should be "applied to vacant land (land without a structure only). An exception is when the assessor has classified a minor structure on vacant land." *El Paso County Board of Equalization v. Craddock, supra,* 850 P.2d at 705 (citing 3 *Assessors Reference Library* at 1.44).

The record reveals that both the county and the taxpayer valued Parcel 1 as vacant land, in essence disregarding the abandoned structure, although the county did establish a separate valuation for the structure. We interpret this to mean that the county and the taxpayer implicitly followed the guidelines of the *Assessors Reference Library* as cited in *Craddock.*

On remand the court should clarify that the structure was considered within the guidelines of the *Assessors Reference Library.* Assuming it was thus properly determined not to change the character of Parcel 1, the value of the structure, if any, should be valued separately and subtracted from the county's valuation of that Parcel. See *El Paso County Board of Equalization v. Craddock, supra.*

### IV.

Because the issue may arise on remand, we address the county's contention that the taxpayer's valuation should be rejected because the taxpayer's expert failed to follow the property tax administration guidelines

in that it included certain "soft costs" in its valuation process. We do not agree.

Colo. Const. art. X, § 3(1)(a) requires that:

The actual value of all real ... property ... shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments....

■ Section 39–1–103(14), C.R.S. (1993 Cum.Supp.) was adopted in 1988 to address the General Assembly's concern that the methods of appraisal being used to value vacant land were unclear and that there was a wide disparity in the treatment of vacant lands by assessors. The statute makes specific reference to "detailed information concerning the appraisal of vacant land in the manuals, appraisal procedures, and instructions prepared and published by the administrator." Section 39–1–103(14)(a), C.R.S. (1993 Cum.Supp.).

■ The implication of this language is that compliance with these procedures and instructions is necessary to accomplish the state's goal of achieving fair and uniform valuation for assessment of real property. Accordingly, we conclude that, in order to adopt the taxpayer's valuation, the court must find that its expert complied with the property tax administrator's guidelines.

Here, the county's experts testified that the taxpayer's expert made deductions for taxes, special assessments, and marketing and administrative expenses which are not allowed by the property tax administrator's regulations, with the result that the subject property was appraised differently from other properties in the county.

■ Such "soft costs" were permitted to be considered as part of the cost of development under the version of § 39–1–103(14)(b) then in effect. Colo.Sess.Laws 1990, ch. 277 at 1688 (amended effective June 2, 1992, Colo.Sess.Laws 1992, ch. 317 at 2215). Consequently, contrary to the county's assertion, the taxpayer did not err

in considering them. *See Commercial Federal Savings & Loan Ass'n v. Board of Equalization*, —— P.2d —— (Colo.App. Nos. 92CA0470, 92CA0577, 92CA0578, and 92CA0579, May 6, 1993). Accordingly, the taxpayer's valuation was not incorrect because its expert considered "soft costs."

The judgment is reversed. The cause is remanded for an additional hearing at which the court should review the county's consideration of and rationale for not applying the market absorption rate to its valuation in light of *El Paso County Board of Equalization v. Craddock, supra,* and this opinion. If the court determines that the county's evidence is sufficient, it should reinstate the county's valuation of the property. If the court again rejects the county's valuation, it may adopt the taxpayer's valuation.

NEY and DAVIDSON, JJ., concur.