PRINCIPAL MUTUAL INSURANCE
COMPANY, Petitioner–Appellee,

and

Board of Assessment Appeals, State
of Colorado, Appellee,

v.

BOULDER COUNTY BOARD OF
EQUALIZATION, Respondent–
Appellant.

No. 93CA1409.

Colorado Court of Appeals,
Div. IV.

Dec. 1, 1994.

Rehearing Denied Jan. 12, 1995.

Brega & Winters, P.C., Ronald S. Loser, Brian A. Magoon, Denver, for petitioner-appellee.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for appellee.

H. Lawrence Hoyt, Boulder County Atty., George Rosenberg, Asst. County Atty., Boulder, for respondent-appellant.

Opinion by Judge ROTHENBERG.

Respondent, Boulder County Board of Equalization, petitions for review of the order of the Colorado State Board of Assessment Appeals (BAA) reducing the valuation of certain property owned by Principal Mutual Insurance Company (taxpayer). We vacate the order and remand for reconsideration.

On January 1, 1992, taxpayer owned property consisting of a vacant 19,898 square foot office/warehouse located on 49,644 square feet of land. For tax year 1992, the assessor valued the land and improvements thereon at $1,213,000. Taxpayer appealed the assessor's valuation to the Boulder County Board of Equalization (BOE) which reduced the property valuation to $1,148,500.

Taxpayer then appealed the property valuation to the BAA. At the hearing before the BAA, taxpayer's expert witness valued the property at $662,476 after considering the income and market approaches to appraisal. According to taxpayer's expert witness, the income approach was the best approach to valuing the property.

The BOE's expert witness agreed with taxpayer's expert that the income approach to valuation was the best approach to valuing the property. Using that approach, the BOE's expert derived a value of $1,148,500. The major differences between the approaches of the two expert witnesses were in the numbers each used as the market rental per square foot and the adjustment for excess vacancy.

At the conclusion of the testimony, the BAA found taxpayer's rental rate too low and the BOE's rental rate too high. Accordingly, the BAA applied a 25% vacancy rate rather than the 4% used by the BOE, used the expenses and capitalization rate used by the BOE, and determined the 1992 actual value of the property to be $805,250.

I.

■ Initially, we note that our review of a respondent's appeal of a BAA decision is limited to a determination of whether the respondent has alleged any procedural errors or errors of law. Section 39–8–108(2), C.R.S. (1994 Repl.Vol. 16B); *Clarke v. Board of Assessment Appeals*, —— P.2d —— (Colo. App. No. 93CA1743, November 3, 1994).

■ A decision of the BAA may be set aside if it reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Denver v. Board of Assessment Appeals*, 848 P.2d 355 (Colo.1993).

■ The BOE claims that the BAA erred in considering taxpayer's evidence of value because taxpayer failed to comply with certain constitutional and statutory requirements in valuing the property. More specifically, the BOE asserts that taxpayer was required to consider all three approaches to valuation and that, since it failed to consider the cost approach, taxpayer's evidence of value was incompetent as a matter of law and should not have been considered by the BAA. We reject the BOE's contention.

Colo. Const. art. X, § 3(1)(a) and § 39–1–103(5)(a), C.R.S. (1994 Repl.Vol. 16B) require the *assessor* to determine the actual value of commercial real property by giving appropriate consideration to the cost approach, market approach, and income approach to appraisal. The statute also requires the *assessor* to document all elements of the three approaches that are applicable, before determining the actual value of the property. *See Creekside at DTC, Ltd. v. Board of Assessment Appeals*, 811 P.2d 435 (Colo.App.1991). *Cf. Board of Assessment Appeals v. Sonnenberg*, 797 P.2d 27, 33 (Colo.1990) (*assessor's* determination of value is determined by "appropriate consideration of the three approaches to real property valuation"). *But see* Colo. Const. art. X, § 20(8)(c) (actual value for *residential* real property determined solely by the market approach to appraisal).

However, the BOE contends that the Colorado Constitution and § 39–1–103(5)(a) also require a *taxpayer* to consider and present evidence of all three approaches to valuation

and that taxpayer's failure to do so bars admission of its evidence of value. We disagree and conclude that when, as here, such evidence of all three approaches to valuation have been presented by the assessor as required by the constitution and by statute, it would impose an onerous and unnecessary burden also to require the taxpayer to provide such valuations. Since neither the language of the constitution nor of the statute imposes such a requirement, we decline to so interpret them. *See General Electric Co. v. Niemet,* 866 P.2d 1361 (Colo.1994) (statute containing plain language with clear meaning must be interpreted as written).

Here, although taxpayer's expert did not consider the cost approach, the BAA nevertheless had before it evidence of the assessor's valuations based on all three approaches. Both the assessor and taxpayer's expert witness agreed the income approach to appraisal was the proper approach for this property. And the assessor presented evidence of valuations based on all three approaches. Accordingly, it is reasonable to infer that the BAA determined value "by appropriate consideration of the three approaches to real property valuation," *Board of Assessment Appeals v. Sonnenberg, supra,* at 33, and that, upon that consideration, it adopted the income approach and arrived at its valuation. We therefore find no error in its consideration of the taxpayer's evidence of value.

Nor are we persuaded that *Resolution Trust Corp. v. Board of County Commissioners,* 860 P.2d 1383 (Colo.App.1993) requires a different result. There, a division of this court held that § 39–1–103(14), C.R.S. (1994 Cum.Supp.) requires a taxpayer's expert to follow the property tax administrator's guidelines in valuing vacant land. In so holding, this court found that compliance with the procedures and instructions set forth in § 39–1–103(14) by both the assessor and taxpayer is necessary to accomplish the state's goal of achieving fair and uniform valuation for the assessment of vacant land.

Here, the valuation of taxpayer's property did not involve the valuation of vacant land, or the application of § 39–1–103(14). Ac-cordingly, that statute is not dispositive of the issue before us.

## II.

■ The BOE next contends that the BAA erred as a matter of law in considering evidence of the property's vacancy rate because the vacancy occurred after the base period. We remand the matter to the BAA for clarification of the vacancy issue.

Colo.Sess.Laws 1991, ch. 323, § 39–1–104(11)(b)(I) at 2004, then in effect, provided:

The provisions of subsection (10.2) of this section are not intended to prevent the assessor from taking into account, in determining actual value for the years which intervene between changes in the level of value, any unusual conditions in or related to any real property which would result in an increase or decrease in actual value.... *On and after January 1, 1989, any other occurrence, condition, factor, act, or change which results in the actual value of the property as of June 30 of the preceding year being less than or greater than the correct level of value by more than ten percent of the correct level of value shall also be an unusual condition* for purposes of this paragraph (b).... (emphasis added)

Initially, we note that § 39–1–104(11)(b)(I) was amended, effective January 1, 1994, and that the General Assembly has now deleted the language emphasized above.

However, under the then applicable statute, which applied to 1992 tax year valuations, an unusual condition would include anything that resulted in a variance of more than 10% between the normal base year period valuation as of June 30, 1990, and the valuation of the property as of June 30, 1991. *See Roberts v. Board of Assessment Appeals,* 883 P.2d 588 (Colo.App.1994).

Here, the BAA applied a 25% vacancy rate, among other factors, in calculating the value of the property. However, in valuing the property, it did not specifically find that the vacancy of the property resulted in a variance of more than 10% as required to constitute an unusual condition under § 39–1–104(11)(b)(I). Nor are we able to deter-

mine from the record whether the vacancy resulted in such a change in valuation. Accordingly, we must remand the matter to the BAA for such a determination.

Further, in order for the change in valuation to constitute an unusual condition within the meaning of § 39–1–104(11)(b)(I), taxpayer must show that the unusual condition, *i.e.*, the significant vacancy rate, occurred between June 30, 1990, and June 30, 1991. But, taxpayer's witness testified only that it was vacant in "mid–1991." Hence, we are unable to determine from the record the date on which the property became vacant, and we must also remand the matter to the BAA for such a determination.

We do not address the BOE's additional contention regarding sufficiency of the evidence because it does not raise a procedural error or error of law. *See* § 39–8–108(2), C.R.S. (1994 Repl.Vol. 16B); *Clarke v. Board of Assessment Appeals, supra.*

The order is vacated, and the cause is remanded to the Board of Assessment Appeals with directions to conduct a hearing consistent with this opinion.

MARQUEZ and CASEBOLT, JJ., concur.