**C.P. & SON, INC., a Colorado corporation, Plaintiff–Appellant,**

**v.**

**THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, The Boulder County Board of Equalization, and Terry L. Phillips, in his capacity as the Boulder County Assessor, Defendants–Appellees.**

**No. 96CA1851.**

Colorado Court of Appeals, Div. III.

Feb. 19, 1998.*

---

* Opinion previously announced as non-published December 18, 1997 is now selected for publica-tion.

Gstalder, Lewis & Bartlett, P.C., John Gstalder, Louisville, for Plaintiff–Appellant.

H. Lawrence Hoyt, Boulder County Attorney, George Rosenberg, Assistant County Attorney, Ruth Cornfeld Becker, Deputy County Attorney, Boulder, for Defendants–Appellees.

Opinion by Judge JONES.

In this property tax case, petitioner, C.P. & Son, Inc. (taxpayer), appeals a judgment of the district court denying the taxpayer's challenge to the valuation placed on its property by respondents, the Boulder County Board of County Commissioners, the Boulder County Board of Equalization, and Boulder County Assessor Terry L. Phillip. We affirm in part and remand with directions.

The subject property, twenty vacant residential lots located in a Broomfield subdivision, was valued at $34,000 per lot by the county assessor for the 1995 tax year. The taxpayer appealed the assessor's valuation to the district court pursuant to § 39–8–108(1), C.R.S.1997, contending that the actual value of the subject property was $19,250 per lot, the price it paid for the property shortly before the valuation date.

The trial court found that the value of the property was $34,000 per lot except for three lots which the court valued at $24,000, $27,000 and $26,000, respectively. The taxpayer subsequently filed this appeal.

## I.

██ The taxpayer contends that the trial court erred in accepting the "mass appraisal" approach to valuing taxpayer's lots. We find no merit to this contention.

██ When valuing vacant land, assessors are required to follow the guidelines established by the state Property Tax Administrator. *Resolution Trust Corp. v. Board of County Commissioners,* 860 P.2d 1383 (Colo. App.1993). These guidelines are set forth in the multi-volume reference set, Division of Property Taxation, *Assessor's Reference Library* (1996).

While the guidelines do not discuss the mass appraisal method in great detail, they do recommend using a computer database, such as a Computer Assisted Mass Appraisal system, for conducting a valuation analysis. *See 2 Assessor's Reference Library, supra,* at 8.3. Furthermore, the guidelines refer to the mass appraisal method favorably by stating: "The major advantage for computer assisted mass appraisal (CAMA) systems is improvement of assessment uniformity and quality." 2 *Assessor's Reference Library, supra,* at 8.6.

Based on the Division of Property Taxation's apparent approval of the mass appraisal method, and the impracticability of valuing large areas of land on a parcel-by-parcel basis, we find that the trial court did not err in accepting this method of valuation.

■ The taxpayer's contention, that the mass appraisal methodology is prohibited by § 39–1–103(5), C.R.S.1997, is not persuasive. This statute does not mandate an individual appraisal on each parcel of land in Colorado, and we decline to read such a limitation into the statute when its plain language does not warrant such an interpretation. *See Scoggins v. Unigard Insurance Co.*, 869 P.2d 202 (Colo.1994).

## II.

The taxpayer also contests two of the trial court's factual findings. First, it contends that the trial court erred in finding that the sale involving the taxpayer's purchase of the subject property was not entitled to much weight in a sales comparison analysis. Secondly, the taxpayer contends that the trial court erred in finding that its unincurred costs of development were not deductible. We agree in part and disagree in part.

■ In making its determination on factual matters, the trial court's evaluation of the credibility of the witnesses and the weight, probative value, and sufficiency of all of the evidence presented are matters solely within its province, and its decisions in such matters may not be displaced on appeal by a reviewing court. *See Board of Assessment Appeals v. Colorado Arlberg Club*, 762 P.2d 146 (Colo. 1988); *Weingarten v. Board of Assessment Appeals*, 876 P.2d 118 (Colo.App.1994).

### A.

■ As to the sales comparison issue, the trial court found that the sale to the taxpayer was not entitled to much weight because the transaction was not completed at arms-length. Under the guidelines, sales which do not qualify as arms-length transactions are not appropriate for comparison in a market analysis. *See* 3 *Assessor's Reference Library, supra*, Addendum III–B, at 1.

Although the taxpayer presented evidence that the sale was in fact an arms-length transaction, the trial court was persuaded by the assessor's testimony that abnormal pressures were involved in the sale because of the lack of success of the subdivision project and the seller's desire to remove itself from the project. Because there is ample evidence in the record to support the trial court's finding that this sale was not appropriate for consideration, we will not disturb that finding on review. *See Arapahoe County Board of Equalization v. Podoll*, 935 P.2d 14 (Colo. 1997).

### B.

As to the cost deduction issue, the trial court found that the assessor's decision not to deduct anything for these costs was a reasonable one, based on its finding that all of the preliminary work necessary to make the lots salable had been done. According to the trial court, this work included the platting, survey costs, earth work, subdivision approval, streets, paving, sidewalks, legal work, sewers, gas, and electricity. As to the taxpayer's future costs of development, the court considered these to be indirect costs which will be passed onto the buyer and, therefore, not deductible.

The guidelines direct assessors to make deductions for "any *unincurred direct development costs* which have *not* been expended by the developer or subdivider, as of the assessment date, but are included in the sales price." 3 *Assessor's Reference Library, supra*, at 4.9 (emphasis added). The costs which qualify for a deduction are limited by the definition of "direct costs of development," which is:

[a]ny cost required for the planning, engineering, and physical installation of tangible development improvements or amenities *necessary to convert a raw land lot or tract into a building site.*

3 *Assessor's Reference Library, supra*, at 4.34 (emphasis added).

The taxpayer argues that despite the fact that no additional costs need be incurred to prepare the subject property for sale or building, its future costs for improvements are nonetheless deductible.

While the trial court indicated that it was not persuaded, its findings are not specific enough to allow us to review this portion of the judgment. Therefore, the cause must be

remanded for additional findings concerning costs of development as to each of the specific costs the taxpayer contends are deductible and whether such qualify as "direct costs of development" pursuant to the guidelines set forth in the *Assessor's Reference Library.* In determining its findings the court may, in its discretion, utilize the current record or receive additional evidence.

We determine that taxpayer's remaining contention lacks merit.

The judgment is affirmed in all respects except as to the deductibility of unincurred costs of development. As to that issue, the judgment is vacated, and the cause is remanded for further proceedings consistent with this opinion.

HUME and KIRSHBAUM **, JJ., concur.