23CA0944 Hoffner v Routt 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0944 Colorado Board of Assessment Appeals Case No. 22BAA968 Susan Hoffner, Petitioner-Appellant, v. Routt County Board of Equalization, Respondent-Appellee, and Board of Assessment Appeals, Appellee. ORDER AFFIRMED Division IV Opinion by JUDGE RICHMAN* Navarro and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Susan Hoffner, Pro Se Erick Knaus, County Attorney, Lynaia South, Assistant County Attorney, Matthew Frederickson, Assistant County Attorney, Steamboat Springs, Colorado, for Respondent-Appellee 
 Philip J. Weiser, Attorney General, John August Lizza, First Assistant Attorney General, Krista Maher, Senior Assistant Attorney General, Denver, Colorado, for Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023
1 ¶ 1 In this property tax case, petitioner, Susan Hoffner appeals an order by the Board of Assessment Appeals (BAA) following a hearing. The BAA upheld the denial of her challenge to the classification and valuation assigned to her real property for the 2022 tax year as assessed by the Routt County Board of Equalization (BOE). We affirm. I. Background ¶ 2 Hoffner owns two adjacent parcels of land in Steamboat Springs, Colorado. One parcel contains a single-family home and is classified as residential (the residential parcel). The other parcel, which is the subject of this appeal (the subject parcel), is a forty-
seven-acre lot that is primarily occupied by a dilapidated tennis court but also contains a paved parking area. ¶ 3 For the 2022 tax year, the Routt County Assessor’s Office reclassified the subject parcel from “residential” to “recreational,” a sub-class of commercial, and valued it at $459,570. This proposed valuation was actually a reduction from the prior tax value of $473,710. But Hoffner argued the value should be reduced to $394,070. 
2 ¶ 4 Hoffner appealed the classification and valuation to the BOE and requested an administrative denial to advance the appeal to the BAA. The BOE accepted the assessor’s value and issued an administrative denial, which Hoffner appealed to the BAA. In her BAA appeal, Hoffner argued that the subject parcel should still be classified as residential and that the assessor’s value of the subject parcel was too high. ¶ 5 The BAA held a hearing in February 2023, and Hoffner’s sole witness was her husband. In terms of classification, Mr. Hoffner raised several issues. First, he testified that when his wife purchased the parcels together in the 1970s, each lot included a golf membership and required the payment of utility fees. He continued that in 1981, in order to have the subject parcel be classified as residential, he agreed with the then assessor to have the subject parcel assessed together with the residential parcel in exchange for surrendering both the golf membership and the utility taps for the subject parcel. According to Mr. Hoffner, the effect of this agreement was to make the subject parcel unmarketable and potentially impossible to sell and use independently from the residential parcel. 
3 ¶ 6 Mr. Hoffner also testified that the tennis court on the subject parcel was “essential” to the use of the residential parcel because the lifestyle of his family revolves around athletics and fitness. This issue was relevant because in 2021, the General Assembly amended the property tax statute to allow the residential classification of unimproved land only if it “contains a related improvement that is essential to the use of the residential improvement located on the identically owned contiguous residential land.” § 39-1-
102(14.4)(a)(I)(C), C.R.S. 2023 (emphasis added). Additionally, he testified that a sewer line located on a utility easement runs from the house on the residential parcel and then crosses the subject parcel, connecting the two parcels and suggesting they should be valued together. ¶ 7 The BOE called Gary Peterson, the Routt County Assessor, as an expert witness regarding classification. Peterson testified that although the subject parcel was contiguous with and under the same ownership as the residential parcel, the tennis court was not essential to the use of the residential parcel. He further testified that real property was classified based on use and valued based on highest and best use. 
4 ¶ 8 In terms of valuation, Mr. Hoffner testified that the BOE’s value of the subject parcel should be reduced to $394,070 based on the surrendered golf membership and tap fees, as well as the estimated cost of demolishing the tennis court because the court was “dilapidated and unusable.” ¶ 9 The BOE called Jordan Larsen, a real property appraiser, to testify about the valuation of the subject parcel. Larsen testified that she prepared a real property appraisal report on the subject parcel, which the BOE submitted into evidence. The report presents a comparison of the subject parcel with six comparable land sales from the two years leading up to the date that the parcel was valued. The six sales ranged in price from $390,000 to $700,500 and were qualitatively adjusted for differences in physical characteristics. Larsen opined that the subject parcel should be valued above comparable sale #3, which was priced at $409,000 and was inferior to the subject parcel, but below comparable sale #2, which was priced at $600,000 and was superior to the subject parcel. Moreover, she testified that comparable sales #1 and #2 were the most similar to the subject parcel, and though she considered all of the comparable sales, she placed the most weight 
5 on sale #1. Larsen further clarified that none of the comparable sales included golf memberships or prepaid tap fees, and that the local utility company indicated that once a tap fee was paid, it could not be surrendered. ¶ 10 Larsen testified that she initially determined the value of the subject parcel to be $575,000. After considering the tennis court, however, she concluded that the court had no useful remaining life and that the highest and best use of the subject parcel was as a vacant lot. Therefore, she estimated the cost of demolition of the tennis court to be $15,000 and deducted that amount from her original figure, resulting in a final value of $560,000 for the subject parcel. ¶ 11 In a written decision, the BAA denied Hoffner’s appeal, specifically rejecting Hoffner’s contention that the property is residential and concluding that the tennis court was not essential to the use of the adjacent property. The BAA also concluded that the presence of the utility easement did not compel a residential classification. The BAA modified the classification from “recreational” to “vacant” and ordered that the value of the subject parcel be raised to $482,548 based on Larsen’s appraisal. Because 
6 section 39-8-108(5)(a.5), C.R.S. 2023, limits the increase in the value of property to 5% over the “valuation set by the county board of equalization,” a 5% increase over $459,570 resulted in a maximum value of $482,548 for the subject parcel for the 2022 tax year. ¶ 12 On appeal, Hoffner contends that the BAA erroneously classified and valued the subject parcel. II. Standard of Review ¶ 13 The BAA (or the district court) reviews BOE decisions de novo, and a hearing operates as a “new trial of an entire controversy.” Bd. of Assessment Appeals v. Sampson, 105 P.3d 198, 203 (Colo. 2005) (quoting Gilpin Cnty. Bd. of Equalization v. Russell, 941 P.2d 257, 263 (Colo. 1997)). The taxpayer bears the burden of proof and, to prevail, must show by a preponderance of the evidence that the assessment is incorrect. Id. at 204. ¶ 14 We review BAA orders under the Administrative Procedure Act. Id. at 208; §§ 24-4-106(11), 39-8-108(2), C.R.S. 2023. In doing so, we review questions of law, including interpretation of applicable constitutional and statutory provisions, de novo. Ziegler v. Park Cnty. Bd. of Cnty. Comm’rs, 2020 CO 13, ¶ 11. But “[i]t is the BAA’s 
7 function, and not that of a reviewing court, to weigh the evidence and to resolve conflicts therein.” Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization, 2022 CO 9, ¶ 26. Thus, we defer to the BAA’s factual findings and will set aside its order only if we conclude that it abused its discretion or that its order is arbitrary and capricious, based upon clearly erroneous factual findings, unsupported by substantial evidence in the record, or otherwise contrary to law. Ziegler, ¶ 11. III. Classification of Subject Parcel ¶ 15 Hoffner argues that the BAA should have classified the subject parcel as residential. We disagree. A. Applicable Law ¶ 16 Section 39-1-102(14.4)(a)(I) defines “[r]esidential land” as “a parcel of land upon which residential improvements are located.” ¶ 17 In Mook v. Board of County Commissioners, 2020 CO 12, ¶ 4, our supreme court held that in order to receive residential classification for tax assessment purposes under section 39-1-
102(14.4)(a), parcels of land with no residential improvements (like the subject parcel) have to be (1) contiguous with residential land; (2) used as a unit with residential land; and (3) under common 
8 ownership with residential land. The court interpreted the “used as a unit” element as requiring that a landowner “us[e] multiple parcels of land together as a collective unit of residential property.” Mook, ¶ 5. ¶ 18 In response to Mook, the General Assembly in 2021 amended the statute to allow the residential classification of such land only if it “contains a related improvement that is essential to the use of the residential improvement located on the identically owned contiguous residential land.” § 39-1-102(14.4)(a)(I)(C) (emphasis added); Ch. 63, sec. 1, § 39-1-102, 2021 Colo. Sess. Laws 252-53. B. Analysis ¶ 19 We begin by noting that Hoffner challenges the BOE’s ultimately unsuccessful argument below that the subject property be classified as “commercial.” Because the scope of an appeal of the BAA’s classification of property for property tax purposes “is limited to review of the propriety of the BAA’s classification determination,” Andrew v. Teller Cnty. Bd. of Equalization, 2012 COA 104, ¶ 9, we do not address Hoffner’s challenge, and instead explain why the BAA’s classification of the subject parcel as vacant was correct. 
9 ¶ 20 For property tax purposes, “vacant land” means “any lot, parcel, site, or tract of land upon which no buildings or fixtures, other than minor structures, are located. ‘Vacant land’ may include land with site improvements.” § 39-1-103(14)(c)(I), C.R.S. 2023. “‘Minor structures’ means improvements that do not add value to the land on which they are located and that are not suitable to be used for and are not actually used for any commercial, residential or agricultural purpose.” § 39-1-103(14)(c)(II)(A) (emphasis added). “‘Site improvements’ means streets with curbs and gutters, culverts and other sewage and drainage facilities, and utility easements and hookups for individual lots or parcels.” § 39-1-103(14)(c)(II)(B) (emphasis added). ¶ 21 The BAA classified the subject parcel as vacant land on two bases. First, despite Hoffner’s argument that the subject parcel should be classified as residential because the presence of a utility easement containing a sewer line running across the corner of the subject parcel showed that the parcels were connected, that type of easement is a feature of vacant land. This finding is explicitly permitted by the statutory definition of “vacant land.” § 39-1-
103(14)(c)(I), (14)(c)(II)(B). Second, the tennis court contributed no 
10 value to the parcel, as evidenced by both parties’ testimony that no one uses the tennis court and by both parties agreeing that “the highest and best use of the subject parcel is to raze the tennis court and sell the property as a vacant residential building site.” Because Hoffner has failed to provide us with a transcript of the hearing before the BAA, we may presume the record supports the BAA’s finding. See EnCana Oil & Gas (USA), Inc. v. Miller, 2017 COA 112, ¶ 16 n.4 (When an appellant fails to provide a copy of the transcript, an appellate court may “presume the record supports the district court’s decision.”). ¶ 22 To the extent Hoffner argues that once a classification is made, it cannot be changed regardless of whether the law changes, we reject this argument, as article X, section 3 of the Colorado Constitution grants authority to the General Assembly to define residential real property. Colo. Const. art. X, § 3(1)(b); Jensen v. City & Cnty. of Denver, 806 P.2d 381, 384 (Colo. 1991). ¶ 23 Hoffner also argues that under the new definition of residential property, the BAA should have still classified the subject parcel as residential because the tennis court was essential to the use of the 
11 single-family home on the residential parcel. Again, we reject this argument. ¶ 24 As the BAA noted in relation to section 39-1-102(14.4)(a)(I)(C), both parties agree that the subject parcel is contiguous to the residential parcel, the parcels have identical ownership, and the subject parcel is improved by a tennis court. What they disagree on is whether the tennis court is “a related improvement that is essential to the use of” the home on the residential parcel. Id. ¶ 25 In finding that the tennis court was not essential to the use of the home, the BAA reasoned that the court was in “disrepair” and had not been used for an extensive period of time, and that Hoffner’s own valuation of the subject parcel “is premised in part on tearing down the tennis court.” This finding is supported by photographs illustrating that the court was unsafe for use on account of multiple cracks in the foundation, as well as Hoffner’s own acknowledgment that the court was “in disrepair” and that the family’s use of the court “diminished.” ¶ 26 Because the BAA’s findings as to the subject parcel’s classification have record support, we will not “substitute[] [our] own factual finding[s] for th[ose] of the BAA.” Lodge Props., ¶ 44. 
12 IV. Valuation of Subject Parcel ¶ 27 Hoffner contends that the BOE’s valuation overvalued the subject parcel. We disagree. A. Applicable Law ¶ 28 When valuing vacant land for property tax purposes, the county assessor must determine the property’s actual value with appropriate consideration given to the market approach, cost approach, and income approach. §§ 39-1-103(5)(a), (14)(b). ¶ 29 The market approach involves analyzing sales of comparable properties in the market. Sampson, 105 P.3d at 203. It reflects “what a willing buyer would pay a willing seller under normal economic conditions.” Bd. of Assessment Appeals v. Colo. Arlberg Club, 762 P.2d 146, 151 (Colo. 1988) (quoting May Stores Shopping Ctrs., Inc. v. Shoemaker, 151 Colo. 100, 110, 376 P.2d 679, 683 (1962)). When using the market approach in these circumstances, an assessor must take into account the “anticipated market absorption rate, the size and location of [the subject parcel], the direct costs of development, any amenities, any site improvements, access, and use.” § 39-1-103(14)(b). 
13 ¶ 30 The cost approach involves estimating the cost of replacing the improvements to the property, less accrued depreciation. Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., 797 P.2d 27, 30 n.9 (Colo. 1990). And the income approach “generally involves calculating the income stream (rent) the property is capable of generating, capitalized to value at a rate typical within the relevant market.” Lodge Props., ¶ 32 (quoting E.E. Sonnenberg & Sons, 797 P.2d at 30 n.8). ¶ 31 If the nature of the property rules them out, inapplicable approaches to value need not be considered or documented. Resol. Tr. Corp. v. Bd. of Cnty. Comm’rs, 860 P.2d 1383, 1386 (Colo. App. 1993). In cases involving vacant land, the cost or the income approach may not be appropriate. Id. B. Analysis ¶ 32 In its order, the BAA found that, in contrast to Hoffner, who provided no market data or analysis in defense of her assertion of the subject parcel’s value, Larsen “provided an appraisal report with six good comparable sales, considering the appropriate [section 39-
1-103(14)(b)] factors, from within an appropriate time frame. To these sales, she made reasonable qualitative adjustments and 
14 presented an adequate analysis.” Accordingly, the BAA adopted Larsen’s analysis. It ordered, based on section 39-8-108(5)(a.5), which limits the increase in the value of property to 5% over the “valuation set by the county board of equalization,” that the value of the subject parcel for the 2022 tax year be $482,548. ¶ 33 The BAA’s finding is supported by the record. In her appraisal report, Larsen considered, as mandated by the statute, both the cost approach and the income approach but rejected them.
1 Instead, she employed the market approach by using six comparable land sales from the area and analyzing these sales in relation to the subject parcel based on characteristics including acreage, zoning, topography, location, and views. Because Hoffner did not provide alternative comparable properties to refute Larsen’s analysis, or otherwise develop an argument addressing flaws in the appraisal report, we are not persuaded that Hoffner has met her 1 Larsen ultimately decided that these approaches were not appropriate for valuing the subject parcel. See Resol. Tr. Corp. v. Bd. of Cnty. Comm’rs, 860 P.2d 1383, 1386 (Colo. App. 1993). In terms of the income approach specifically, she noted, “There is no market for income-producing residential lots. The current condition of the tennis court improvement makes the court inoperable. No market income data is available for this configuration of a single tennis court on private residential lot.” 
15 burden in proving that it was more likely than not that the BAA’s valuation was incorrect. See Sampson, 105 P.3d at 204. ¶ 34 Since the BAA’s decision enjoys record support, we conclude that the BAA did not abuse its discretion by denying Hoffner’s appeal. V. Disposition ¶ 35 The order is affirmed. JUDGE NAVARRO and JUDGE PAWAR concur.